**557 P.2d 183**

**The CARRIAGE TRADE MANAGEMENT CORPORATION, a corporation, Appellant,**

**v.**

**ARIZONA STATE TAX COMMISSION, Appellee.**

**No. 1 CA–CIV 2928.**

Court of Appeals of Arizona,
Division 1,
Department A.

Nov. 26, 1976.

Tanner, Jarvis, Owens & Hoyt, Ltd. by Melvin J. Owens, Phoenix, for appellant.

Bruce E. Babbitt, Atty. Gen., by Frank L. Migray, Asst. Atty. Gen., Phoenix, for appellee.

OPINION

DONOFRIO, Presiding Judge.

This is an appeal by plaintiff, The Carriage Trade Management Corporation (Carriage Trade) from an adverse decision by the Superior Court of Maricopa County holding that Carriage Trade was subject to a transaction privilege tax pursuant to A.R. S. § 42–1310(2)(j). Appellant will hereafter be designated as plaintiff, or Carriage Trade.

Carriage Trade presents two questions on this appeal. First, whether the trial

court was in error when it determined their business to be one of advertising under § 42–1310(2)(j), supra, and secondly, if the trial court was not in error, then whether the tax imposed on plaintiff was illegal as double taxation in view of the fact that a sales tax had been paid on all free discounts when used by the patron.

The pertinent facts as stipulated by the parties can be stated as follows: Carriage Trade has been engaged in the business of soliciting discounts from a variety of restaurants and a few "bonus establishments" since 1971 and selling them to the public. Each purchaser is given a directory of participating businesses and a plastic card for recording the used discounts. The discount is good only once at each establishment, and the least expensive item ordered is the free discount. The directory lists the name, address, cuisine, hours and facilities offered by each establishment.

Carriage Trade has negotiated and written contracts with each establishment that offers a discount. The contract provides that in return for the free discount plaintiff will print the aforesaid directory and promote the sale of the plan. The directory encourages the patron to purchase alcoholic beverages, to tip generously and to return to the establishment on their own if they enjoy their visit.

The purchase of Carriage Trade's plan is limited generally to the time and day that the card may be used. Generally, the card may not be used during the restaurant or establishment's busy periods. Thirty-one of the restaurants listed are located in metropolitan Phoenix, but only 12 honor the discount on Fridays and Saturdays. Carriage Trade receives no monetary compensation from the participating establishments, but does receive the right to offer the free discounts to the purchasers of its plan who pay them a set sum ($10) for the plan.

Each patron using the plan is required by the restaurant or establishment to pay for all alcoholic beverages, and to pay all federal, state and local taxes on the free discount.

In 1972 the State Tax Commission assessed a transaction privilege tax on Carriage Trade under A.R.S. § 42–1309. Carriage Trade paid the tax, interest and penalties under protest as allowed by A.R.S. § 42–1339 and commenced suit on the Commission's actions. The trial court found Carriage Trade was in the business of advertising and did fall under A.R.S. § 42–1310(2)(j)[1], and is therefore subject to the transaction privilege tax of Arizona.

## IS PLAINTIFF IN BUSINESS OF ADVERTISING?

Previously, advertising was taxed under subsection (h) of paragraph 2 of A.R.S. § 42–1310. In the case of *State Tax Commission v. Ryan-Evans Drug Stores,* 89 Ariz. 18, 357 P.2d 607 (1960), the Court interpreted this old subsection (h) very broadly. The Court held that trading stamps were advertising and subject to the Arizona transaction privilege tax. The State Legislature in 1972 enacted subsection (j) which contained the same wording regarding advertising as was in the old subsection (h). This was a reenactment of the provision to tax the business of advertising as previously defined and administered by our law. It is a general rule that when the Legislature reenacts a statutory provision after there has been uniform construction by the officers required to act under it, the presumption is that the Legislature knew of such construction and

---

1. A.R.S. § 42–1310(2)(j).

"The tax imposed by subsection A of § 42–1309 shall be levied and collected at the following rates:

    *     *     *     *     *

2. At an amount equal to one per cent of of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

    *     *     *     *     *

(j) Advertising by billboards, direct mail, radio, television or by any means calculated to appeal to prospective purchasers."

adopted it in reenacting the statute. *Jenney v. Arizona Express, Inc.,* 89 Ariz. 343, 346, 362 P.2d 664, 667 (1961).

Contrary to plaintiff's argument that the *Ryan-Evans* case is not applicable we feel the case is very pertinent to explain the legislative intent. If the Supreme Court's broad interpretation had been contrary to the legislative will, then it would have been the responsibility of the Legislature to specifically limit the scope of A.R.S. § 42–1310(2)(j) to only apply to the actual mechanical process of producing an advertisement as contended by plaintiff or to otherwise clarify the matter.

■ Plaintiff urges that their primary activity is selling memberships in their dinner club which they contend is a service business. They also urge that any advertising they engage in is only incidental to the service they provide for their members.

A.R.S. § 42–1301 supplements A.R.S. § 42–1310 with definitions of key words. Paragraph (1) of A.R.S. § 42–1301 defines business as including:

" * * * all activities or acts, personal or corporate engaged in or caused to be engaged in with the object of gain, benefit, or advantage, either directly or indirectly * * *."

The plaintiff must be categorized as engaging in business activity by the foregoing statute. In the stipulation of facts several passages deserve repeating to gain insight into the nature and intent of the plaintiff's business. Paragraph 3, subparagraphs b, c, e, g, h, i and j of the stipulated facts follow:

"3. The written agreements between plaintiff and participating restaurants provide among other things:

* * * * * *

(b) That a directory will be prepared, published and distributed, which lists the name and address of each restaurant associated in the program, together with a short description of the cuisine and facilities offered at each member restaurant.

(c) That membership cards will be prepared, printed, sold and distributed to the general public on behalf of the member restaurants.

* * * * * *

(e) That for each particpating restaurant, Plaintiff prepares and distributes the membership cards and directories to the general public.

* * * * * *

(g) That *Plaintiff agrees to advertise and promote not only the sale of membership cards, but also the location and facilities of each restaurant associated in the program;* that in order to maximize the publicity and exposures for the restaurants, the Plaintiff is further authorized to advertise on a national scale and publicize all participating restaurants on an inter-state basis.

(h) That in general a free dinner may not be obtained from a participating restaurant on its busy days * * *.

(i) That the privilege of a free dinner may be exercised only once during a 'season' (usually six to twelve months) at each participating restaurant.

(j) That participating restaurants agree not to enter into another like or similar dinner club program during the duration of their agreement with Plaintiff." (Emphasis added)

The term "advertise" means the act or practice of attracting public notice and attention. It includes all forms of public announcements which are intended to aid directly or indirectly in the furtherance or promulgation of an idea, or in directing attention to business, commodity, service or entertainment. 3 Am.Jur.2d Advertising § 1, p. 356.

Our analysis of the case leads us to agree with the appellee-defendant's contention that the central theme of the plaintiff's business is the promotion and public exposure of the individual establishments in the program. This theme is supported by subparagraph (g) of the stipulated facts, particularly the sentence that the plaintiff is to maximize the publicity and exposure

of each participating restaurant on an inter-state basis. Subparagraph (h) of the facts, also, illustrates the promotional aspect of the plaintiff's business. Purchasers of the plan are limited in the use of the discount generally to slack business periods. This for example, helps to fill the restaurants during slow periods, and obviously is to the restaurant's advantage. The directory encourages the purchase of cocktails and wine, and directs the patron to tip generously for even the free dinner. This gives exposure to the restaurant, allows the restaurant to sell more alcoholic beverages during an otherwise slow time and allows the waiters and waitresses to earn better wages on a normally less busy day. Also, the restaurant does not lose any money on regularly busy days because generally the discounts are not honored on these days.

All things considered, the establishment involved within the program is not in the business of giving away free discounts, and therefore must have an incentive for joining the program. We believe that incentive is the anticipation of increased patronage and income as a direct result of plaintiff's business.

Plaintiff realizes income from its patrons' "membership fees" as a result of its advertising scheme on behalf of the participating establishments. A.R.S. § 42–1301(1) specifically states that the compensation is not required to be a direct result of the business, but may be an indirect result.

Based on the foregoing reasons, we hold that the plaintiff is in the business of advertising as outlined in A.R.S. § 42–1310(2)(j), and is subject to the tax as applied to it by the Arizona State Tax Commission.

## IS THE LEVIED TAX DOUBLE TAXATION?

Carriage Trade urges that the tax which is imposed on it is illegal as double taxation in view of the fact that a sales tax is being paid on the free discounts and on the printing. We do not agree.

The transaction privilege tax is levied upon the person who is exercising the privilege of engaging in an enumerated business. *New Cornelia Cooperative Mercantile Company v. Arizona State Tax Commission*, 23 Ariz.App. 324, 327, 533 P.2d 84, 87 (1975); *Arizona State Tax Commission v. Garrett Corporation*, 79 Ariz. 389, 291 P.2d 208 (1955). A.R.S. § 42–1302 allows the person or business to pass the tax levied upon them to their customers as any other cost is passed on. Therefore, each business in question is being taxed only once.

Carriage Trade is now being taxed in this case on the privilege of being able to promote and advertise for the various establishments. Its gross receipts are determined from the indirect payment of the membership fees by patrons who enroll in the program, i. e., the membership fees of $10 for its advertising services.

The tax that is paid by Carriage Trade to its printer is the tax levied upon the printer for his privilege to do business in Arizona. The printer has simply passed this cost on the Carriage Trade, as allowed by A.R.S. § 42–1302.

The restaurants have purchased food and other items from wholesalers for resale to the public. When the food is served to the public, the restaurant becomes liable for the transaction privilege tax. Also, the establishments are recieving a service (promotion) for the free discount they give, and the value of such a service is measured by the value of the free discount.

A.R.S. § 42–1301(1), (8) and (11) provide that the value of such service be considered business and the value must be reported in gross receipts. When the patron pays the tax he is paying what the restaurant owes and has passed on to him as a consumer.

For the foregoing reasons this Court finds no double taxation involved in the case presented.

Affirmed.

OGG and FROEB, JJ., concurring.