714 P.2d 448

**MULTIPLE LISTING SERVICE OF TUCSON, INC., Plaintiff/Appellee,**

v.

**The CITY OF TUCSON, a body politic and corporate, Defendant/Appellant.**

No. 2 CA–CIV 5456.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 7, 1985.

Review Denied Feb. 12, 1986.

Little, Fisher & Siegel, P.C. by Barbara E. Fisher, Tucson, for plaintiff/appellee.

Frederick S. Dean, Tucson City Atty. by Michael G. Wood, Tucson, for defendant/appellant.

HOWARD, Judge.

This is an appeal from the granting of a summary judgment. The determinative issue is whether the real estate listings distributed by Multiple Listing Service of Tucson, Inc. (MLS) are "publications" which subject MLS to taxation under § 19–81 of the Tucson Code. We hold that they are not, and affirm.

MLS is a corporation which provides its members and affiliate members, most of whom are real estate brokers, with a loose-leaf listing service containing properties offered for sale. The listings are confidential and are available only to members and affiliate members of MLS who pay a fee for its services.

MLS was audited by the city for the period July 1, 1980 through May 31, 1983. As a result, a tax assessment was made upon it in the amount of $72,540.45 which, with penalties and interest, resulted in a total sum due and owing of $77,637.62. An administrative tax hearing was held and the hearing officer upheld the assessment. MLS brought an action for a refund of the protested taxes in the superior court, claiming that its activities were not within the publishing classification. During the pendency of the action, MLS paid additional taxes under protest in the amount of $8,769.05. The trial court agreed with MLS and ordered the city to refund to MLS the taxes it had collected.

The section of the city code relied upon by the city is § 19–81 which provides: "A tax is hereby levied in an amount equal to two (2) per cent upon the gross proceeds of sales or gross income from the business upon every person engaging or continuing within the city in the business of publication of newspapers, magazines or other periodicals and publications, when published within the city, including the gross income derived from subscriptions, advertising and notices...."

A regulation has also been promulgated, IIR9–2(B), which defines the term "publication" as follows: "The term 'publication' includes books, newspapers, magazines, music, periodicals and any other literary work."

The taxpayer argued in the trial court that its service was not a "publication" and that it was not in the business of "publication" because its service was not available to the general public.

◼ The city's argument is that it can be seen from the entire taxing structure of the city code that the city intends to tax all business and professional pursuits and that therefore it intended to tax the activities of MLS. Thus, the city argues, it need only place MLS's activities in a category that is close to what MLS is doing. In reality, the city's argument is: "Close is good enough." To support its argument the city refers us to *Carriage Trade Management Corporation v. Arizona State Tax Commission*, 27 Ariz.App. 584, 557 P.2d 183 (1976), where the court held that a company engaged in the business of selling restaurant discount books is engaged in advertising and was subject to the Arizona transaction privilege tax. The city also refers us to *State Tax Commission v. Peck*, 106 Ariz. 394, 476 P.2d 849 (1970), where the operation of coin-operated laundromats and car-washing machines was held by the court to constitute the renting of personal property and therefore subject to the Arizona transaction privilege tax. We also note that in *State Tax Commission v. Ryan-Evans Drug Stores*, 89 Ariz. 18, 357 P.2d 607 (1960), trading stamps were held by the court to be advertising subject to the Arizona transaction privilege tax.

◼◼ Contrary to the city's contention, these cases do not stand for the proposition that close is good enough. In each case the activities were clearly within the taxation classification. That is not so here. The city's use of the word "publication" is, by definition, limiting. It implies a communication to the general public. This is what

was held by the Rhode Island court in *Statewide Multiple Listing Service, Inc. v. Norberg*, 120 R.I. 937, 392 A.2d 371 (1978). That case concerned an activity like the activity carried on by MLS. In *Statewide*, an assessment had been made upon the activities of Statewide, a revenue agent having determined that the services of Statewide, in particular, the booklet giving the listing of the properties, was a catalog, therefore subject to taxation. Statewide contended that its booklet constituted a publication and was therefore exempt in the State of Rhode Island, which gave an exemption from gross receipts for publications. In finding that the booklet was not a "publication," the court stated:

> "We find that the term 'publication' employed in § 44–18–30(B) is clear and unambiguous. It implies a communication to the general public. *Marx v. United States*, 96 F.2d 204, 206 (9th Cir.1938), *quoting Associated Press v. International News Service*, 245 F. 244, 250–51 (2d Cir.1917); *Tiffany Productions v. Dewing*, 50 F.2d 911, 914 (D.Md.1931); *Estill County v. Noland*, 295 Ky. 753, 763, 175 S.W.2d 341, 346 (1943); *Hancock-Nelson Mercantile Co. v. Commissioner of Taxation*, 298 Minn. 341, 345, 215 N.W.2d 620, 622 (1974); *Business Statistics Organization, Inc. v. Joseph*, 299 N.Y. 443, 451, 87 N.E.2d 505, 508 (1949); Black's Law Dictionary 1396 (rev. 4th ed. 1968); Webster's Third New International Dictionary 1836 (1968). Where the language of a statute expresses a clear and sensible meaning, that meaning will be conclusively presumed to be the one intended by the Legislature. *Markham v. Allstate Insurance Co.*, 116 R.I. 152, 155–56, 352 A.2d 651, 653 (1976). No interpretation is required or permitted. *Pacheco v. Lachapelle*, 91 R.I. 359, 361–62, 163 A.2d 38, 40 (1960). In the case at bar, the plain meaning of the language used by the Legislature requires that, to qualify for the exemption, a periodical must be available to the general public. The booklet at issue is available only to MLS members who are bound by their agreement to keep the booklet confidential." 392 A.2d at 373.

We agree with the Rhode Island court. The term "publication" as used in the Tucson Code is clear and unambiguous. The plain meaning of the language used by the city council requires that the material must be available to the general public. Since it is not available to the general public in this case, it is not a publication within the meaning of § 19–81 of the Tucson Code.

Affirmed.

BIRDSALL, P.J., and FERNANDEZ, J., concur.