893 P.2d 75

**CITY OF PHOENIX, a municipal corporation, Plaintiff–Appellant,**

v.

**ARIZONA RENT–A–CAR SYSTEMS, INC., Defendant–Appellee.**

**No. 1 CA–TX 93–0008.**

Court of Appeals of Arizona, Division 1, Department T.

April 11, 1995.

Roderick G. McDougall, Phoenix City Atty. by Sandra K. McGee, Asst. City Atty., Phoenix, for appellant.

Warner, Angle, Roper & Hallam, P.C. by Peter D. Ambelang and Ron J. Aschenbach, Phoenix, for appellee.

## OPINION

NOYES, Judge.

■ The tax court granted summary judgment to Appellee Arizona Rent–A–Car Systems, Inc. ("Budget"), holding that refueling charges paid by customers who returned cars with less than full gas tanks were not taxable as gross income from Budget's car rental business. We conclude that refueling charges are an integral part of Budget's car rental business, and therefore taxable as gross income from that business. We reverse the tax court, vacate its opinion, and remand with directions to enter judgment in favor of the City.

The City of Phoenix audited Budget for the period April 1986 through October 1989 and determined that Budget's gross revenue from its car rental business in Phoenix during the audit period was about $90 million, including about $2 million from refueling charges. The main issue on appeal relates to the City's assessment of about $29,000 in privilege taxes on the refueling charges. Budget protested the assessment, the protest went to hearing, and the hearing officer held that the refueling charges were not gross income from the car rental business.

After the hearing officer's decision, the City engaged in internal review, and negotiations with Budget, to determine whether to settle or to appeal. Approximately seven months after receipt of the hearing officer's decision, the City decided to appeal (and to settle another issue that is therefore not an issue on appeal), and it issued an adjusted

tax assessment on the refueling charges, which Budget paid. The City then appealed to the tax court as authorized by Phoenix City Code section 14–575. After briefing and argument on cross-motions for summary judgment, the tax court granted summary judgment to Budget and later published an opinion pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–171, *repealed by* 1994 Ariz.Sess.Laws, ch. 287, § 3. *See City of Phoenix v. Arizona Rent–A–Car Systems, Inc.*, 174 Ariz. 532, 851 P.2d 157 (Tax 1993). The City appealed. We have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994).

The material facts are undisputed; the parties dispute only the correctness of the tax court's legal conclusion. We review questions of law *de novo. Libra Group, Inc. v. State*, 167 Ariz. 176, 179, 805 P.2d 409, 412 (App.1991).

Budget is in the business of renting cars to short-term lessees. Budget is not in the business of selling gasoline; in fact, some Budget sites do not even have gas pumps. But each Budget car has a full gas tank when the customer rents it. The Budget rental contract provides that a "refueling charge" will be assessed unless the customer returns the car with a full gas tank. The contract has a "refueling charge" line among the many that, when filled in, add up to the total charge of the car rental. The contract also states: "Rates do not include gasoline. Renter pays for gasoline used" and "Contract closed subject to final audit and fuel level verification." Fuel level verification occurs when the car is returned and a Budget employee looks at the fuel gauge. If the needle is below "full," the employee estimates how many eighths of a tank are missing, then writes on the "Refueling charge" line of the contract an amount that is arrived at by converting the missing-fuel estimate to the dollars-per-gallon refueling charge set forth on the contract. Most cars are returned with full gas tanks; Budget estimates that it furnishes about ten percent of the gas consumed in its rental cars.

The taxes imposed on Budget by Phoenix City Code sections 14–450 and 14–452[1] are

**1. Pertinent Phoenix City Code Sections**

Before April 1, 1987, former **Section 14–2(a)(8)** imposed a privilege tax

at an amount equal to 1.2% of the gross income from the business activity upon every person engaged or continuing in the following business activity: .... (8) leasing or renting tangible personal property for a consideration including that which is semi-permanently or permanently installed within the city.

**Section 14–100** provides in pertinent part:

For the purposes of this Chapter, the following definitions apply:

....

*"Business"* means all activities or acts, personal or corporate, engaged in and caused to be engaged in with the object of gain, benefit, or advantage, either direct or indirect, but not casual activities or sales.

....

*"Casual Activity or Sale"* means a transaction of an isolated nature made by a person who neither represents himself to be nor is engaged in a business subject to a tax imposed by this Chapter....

....

*"Sale"* means any transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, including consignment transactions and auctions, of property for a consideration....

Effective April 1, 1987, **Section 14–200** provided:

(a) Gross income includes:

(1) The value proceeding or accruing from the sale of property, the providing of service, or both.

(2) The total amount of the sale, lease, license for use, or rental price at the time of such sale, rental, lease, or license.

(3) All receipts, cash, credits, barter, exchange, reduction of or forgiveness of indebtedness, and property of any kind and nature derived from a sale, lease, license for use, rental, or other taxable activity.

(4) All other receipts whether payment is advanced prior to, contemporaneous with, or deferred in whole or in part subsequent to the activity or transaction.

(b) Barter, exchange, trade-outs, or similar transactions are includable in gross income at the fair market value of the service rendered or property transferred, whichever is higher, as they represent consideration given for consideration received.

(c) No deduction or exclusion is allowed from gross income on account of the cost of the property sold, the time value of money, expense of any kind or nature, losses, materials used, labor or service performed, interest paid, or credits granted.

The previous definition of "gross income" in former City Code Section 14–1 was substantially the same except for certain specific exclusions not applicable in this case.

Effective April 1, 1987, **Section 14–450(a)** imposed a 1.2% tax on

calculated as a percentage of gross income from the business of renting automobiles for terms of thirty-one days or less. Phoenix City Code section 14–200 includes within "gross income" everything that a taxpayer receives as consideration "derived from ... taxable activity," with no deduction or exclusion for business costs of any kind. The City argues that the Phoenix City Code defines "gross income" and "business" expansively, to include in the tax base all conceivable receipts by the taxpayer. The City acknowledges that "where there is ambiguity, a revenue statute should be construed liberally in favor of the taxpayer and strictly against the state." *See Ebasco Servs., Inc. v. State Tax Comm'n*, 105 Ariz. 94, 97, 459 P.2d 719, 722 (1969).

Budget argues that the "refueling charge" is a sale of gasoline (and exempted from taxation by Phoenix City Code section 14–465(j)), and that the refueling charge is a separate transaction from the car rental and not an integral part of it. Budget advises that "integral" means "essential to completeness," citing *Webster's New–Collegiate Dictionary* 437 (1958). The City argues that the refueling charge is a service (or a penalty), and an integral part of each car rental transaction.

■ Budget relies primarily on *State Tax Comm'n v. Holmes & Narver, Inc.*, 113 Ariz. 165, 548 P.2d 1162 (1976), and so did the tax court, and so do we. In *Holmes,* the State contended that design and engineering services were gross receipts of the taxpayer's construction business. *Id.* at 167, 548 P.2d at 1164. The court disagreed, and in doing so articulated a three-part test that was discussed by the tax court here, as follows:

Budget argues that it satisfies this [*Holmes* ] test because: (1) it is easy to ascertain what part of its business is for gasoline sales and what part is for rentals; (2) the amount of gasoline sold is not inconsequential; and (3) gasoline sales are not incidental to the rental business. Thus, the gas it sells to rental customers is not part of its rental business for tax purposes. The Court agrees with Budget.... [T]he import of the [*Holmes* ] holding is clear: when the amount involved is not minimal, when it can be easily calculated, and when the service it relates to is not an integral part of the main business, the main and ancillary services can be separated for tax purposes.

174 Ariz. at 533–34, 851 P.2d at 158–59.

■ There is no question that the refueling charge is easily calculated; it is a line item in every car-rental contract. Regarding the other two elements of the *Holmes* test, however, we respectfully disagree with the tax court's legal conclusion. Budget claims that refueling charges were "not inconsequential," and the tax court agreed, finding that they were "not minimal." These are relative values. Of Budget's audit-period gross income, refueling charges accounted for about two percent ($2 million out of $90 million). Although $2 million is a large sum of money, the proper focus is not on the dollars, but on the percentage of business represented by those dollars. The second element of the *Holmes* test is: "the amounts in relation to the company's total taxable Arizona business are not inconsequential." *Holmes,* 113 Ariz. at 169, 548 P.2d at 1166. The *Holmes* court also said: "Since about

the gross income from the business activity upon every person engaging or continuing in the business of leasing, licensing for use, or renting tangible personal property for a consideration, including that which is semi-permanently installed within the city as provided by regulation.
At the same time, **Section 14–452** imposed an additional two percent (2%) tax on
the gross income from the business activity of any person engaging or continuing in the business of leasing, licensing for use, or renting any motor vehicle with a gross vehicle weight of less than 12,000 pounds for a term of not more than thirty-one calendar days ...

**Section 14–575** provides in pertinent part:
(b) The tax collector may seek judicial review of all or any part of a hearing officer's decision by initiating an action in the appropriate court of this county.
(c) An action for judicial review shall not be commenced more than thirty days after receipt of notice by the taxpayer of any refund or assessment recalculated or reduced to conform to the hearing officer's decision. Failure to bring the action within thirty days shall constitute a waiver of any right to judicial review, except as provided in subsection (f) below.

forty-three percent of the total fixed fee was attributable by Holmes & Narver to design and engineering services, it is clear that the design and engineering services were substantial in relation to the other services required by the contract." *Id.* at 168, 548 P.2d at 1165. No matter how the second element of the *Holmes* test is phrased, we conclude that two percent of the business is not enough to satisfy it.

■ Budget also fails the third element of the *Holmes* test, articulated by that court as "those services cannot be said to be incidental to the ... business." *Id.* at 169, 548 P.2d at 1166. Budget claims that the refueling charges were "not incidental," and the tax court agreed, finding that they were "not integral" to the car rental business. We adopt the tax court's choice of language, finding it an unambiguous means of expressing this element of the *Holmes* test. But we conclude that the refueling charge is assuredly integral to Budget's car rental business. The refueling charge is a built-in condition of every Budget car rental contract.

The South Dakota Supreme Court addressed virtually the same facts in a case involving a National Car Rental franchisee and held that "the amounts charged by National in this case are all a part of the business of leasing cars ..." *Matter of Townley*, 417 N.W.2d 398, 400 (S.D.1987). We find *Townley* persuasive:

It is apparent from National's own contract that amounts received for fuel cost reimbursement ... were considered part of gross receipts from car rentals. ... [T]he contract sets out "Rental Charges." Included within rental charges by National are "... refueling and other services."

. . . .

The courts have reached a similar result in many cases [footnote omitted] dealing with the costs of transportation or delivery.... Although [these cases] may not be completely dispositive, they substantially support the principles involved. In *Revenue Cabinet v. Budget Rent–A–Car of Cincinnati, Inc.*, 704 S.W.2d 199 [Ky.1986], app. dis. 476 U.S. 1137, 106 S.Ct. 2239, 90 L.Ed.2d 687 (1986), ... the court held that a gross rental or lease charge tax applied

to all charges ... and that gross included everything without deduction. The court stated: "If it is a charge contained in the lease, by clear meaning that is a 'lease charge.'" *Revenue, supra,* 704 S.W.2d at 202. In addition, the South Dakota statutes themselves are dispositive. The obvious intent of the South Dakota legislature is to impose a 4% tax upon gross receipts of any business or service renting tangible personal property. We give these words and phrases their plain meaning and effect. [Citation omitted.] Therefore, the cost of gasoline ... is included in the rental charge and subject to the gross receipts tax.

*Id.* at 400.

The Kentucky Supreme Court addressed analogous facts in *Revenue Cabinet v. Budget Rent–A–Car of Cincinnati, Inc.*, 704 S.W.2d 199 (Ky.1986) and concluded:

We further affirm the Board of Tax Appeals in its opinion that the [usage] tax applies to all charges ... as set out in the lease agreement with Budget as lessor and the customer as lessee. We find no ambiguity in a statute which assesses the usage tax upon "gross rental" and "gross ... lease charges." As any dictionary definition reads, "gross" means "without deductions." If it is a charge contained in the lease, by clear meaning that is a "lease charge."

*Id.* at 202.

There is contrary authority, but we find it distinguishable. *Russell v. Hertz Corp.*, 139 Ill.App.3d 11, 93 Ill.Dec. 805, 487 N.E.2d 630 (1985), *aff'd sub nom. Freund v. Avis Rent–A–Car Sys., Inc.*, 114 Ill.2d 73, 101 Ill.Dec. 885, 499 N.E.2d 473 (1986) commented that Avis had over-taxed a customer by including refueling charges in the tax base, *id.,* 93 Ill.Dec. at 809, 487 N.E.2d at 634, but the comment was dictum, the case was disposed of on procedural grounds, and the statute at issue taxed the "rental value" of the car, *id.* 93 Ill.Dec. at 807, 487 N.E.2d at 632. *Material Contractors, Inc. v. Donahue*, 14 Ohio St.2d 19, 235 N.E.2d 525 (1968) found that fuel-cost reimbursement to a lessor was not subject to sales tax as part of the rental

"sale," *id.* 235 N.E.2d at 528, but the contract was for annual rental of tractor-trailers, and it provided that the lessor would furnish the fuel and be reimbursed on an annual basis for the actual cost of fuel used. *Id.* 235 N.E.2d at 526.

In summary, we conclude that because every Budget car rental contract includes a refueling charge, the charge is an integral part of Budget's car rental business. Because most customers return with a full gas tank, thus avoiding the refueling charge, the charge accounts for a minimal percentage of Budget's car rental business. Accordingly, refueling charges paid to Budget are taxable as gross income from the car rental business.

Budget's other argument on appeal is that the tax court should have granted its motion to dismiss the appeal because the City unreasonably delayed in issuing an amended tax assessment after the hearing officer's ruling. On the facts presented, we find no abuse of discretion in the tax court's denial of the motion to dismiss.

The judgment of the tax court is reversed, its opinion is vacated, and the case is remanded with directions to enter judgment in favor of the City, and for any other necessary proceedings.

LANKFORD, P.J., and GARBARINO, J., concur.