942 P.2d 1187

**ADVO SYSTEM, INC., a foreign corporation, Plaintiff, Counter-defendant–Appellant, Cross Appellee,**

v.

**CITY OF PHOENIX, a municipal corporation, Defendant, Counterclaimant–Appellee, Cross Appellant.**

**No. 1 CA–TX 96–0022.**

Court of Appeals of Arizona, Division 1, Department T.

Aug. 5, 1997.

Gabroy, Rollman & Bossé, P.C. by Steven L. Bossé, Richard A. Brown, Tucson, for Plaintiff, Counterdefendant-Appellant, Cross Appellee.

Roderick G. McDougall, City Attorney by Sandra K. McGee, Assistant Chief Counsel, Phoenix; for Defendant, Counterclaimant–Appellee, Cross Appellant.

## OPINION

VOSS, Judge.

Taxpayer ADVO System, Inc. (the taxpayer or ADVO), brought this action in the tax court for a refund of $358,346.67 paid under protest on an assessment for City of Phoenix privilege license taxes, penalties and interest for the audit period January 1984 through December 1989. The City counterclaimed for an additional $64,268.89 in taxes that was abated during the administrative process. The taxpayer appeals, and the City cross-appeals, from a judgment entered on cross-motions for summary judgment. These issues are presented:

1. Whether those portions of ADVO's business receipts that ADVO paid out as U.S. postage for mailing its customers' advertising materials were part of ADVO's gross income from the business activity of "local advertising";

2. Whether the tax court erred in holding that ADVO was entitled to exclude sums from its local advertising gross income equal to those of ADVO's job printing charges to which its subcontractors added reimbursement charges for their own job printing business privilege taxes; and

3. Whether the tax court erred in holding that ADVO was entitled to exclude sums from its local advertising gross income equal to its expenditures for printed materials on which it paid City of Phoenix use taxes.

## FACTS AND PROCEEDINGS BEFORE THE TAX COURT

ADVO is in the business of direct mail marketing. Direct mail marketing consists of preparing printed material for delivery to the United States Postal Service for third-class bulk mailing on behalf of local businesses who wish to deliver information to particular population segments. ADVO enables its customers to target their messages to households in any or all of the country's 35,000+ ZIP code areas by using its proprietary computer data base of over 104 million residential addresses. ADVO does a portion of its business in the City of Phoenix.

ADVO assembles, addresses, and mails two categories of advertising products for its customers, "marriage mail" and "solo mail." Solo mail is a single item mailed by ADVO for a particular customer. Marriage mail is made up of written advertisements for a number of ADVO's customers that are loosely combined inside a larger "wrap" piece to reduce the costs that ADVO's customers would otherwise incur for separate mailings.

ADVO's customers and subcontractors deliver all advertisements to ADVO's facility. For marriage mail, ADVO mechanically collates the individual advertisements into packages, each of which contains a detached address label. Solo mail is labeled by machine and mailed according to a program tailored to the customer's marketing needs. Using its proprietary mailing data base, ADVO sorts all mail by ZIP code, mail carrier route, and walk-sequence order, thereby eliminating intermediate processing that the U.S. Postal Service usually performs.

Where ADVO subcontracts the job printing work for a particular mailing, its customer invoices either state a single price for ADVO's services, with no breakdown into components such as job printing, or separately state a job printing charge. ADVO's separately-stated job printing charges reflect a mark-up over ADVO's actual job printing costs.

Before August 1990, some of ADVO's job printing subcontractors passed along their job printing taxes to ADVO. The City gave ADVO a credit for any job printing taxes imposed on subcontractors by the City of Phoenix.

When ADVO uses an out-of-state job printing subcontractor and charges a single price to its advertising customer without separately stating a job printing charge, ADVO sometimes pays Arizona and City of Phoenix use taxes computed on the price it paid the subcontractor. Where ADVO uses an out-of-state job printing subcontractor and separately states a job printing charge on its customer invoice, however, ADVO pays no Arizona or City of Phoenix use taxes.

ADVO's invoices to its customers for solo mailings separately state postage charges. Marriage mail invoices do not. Postage for solo mail is sometimes paid using the customer's postage permit. ADVO otherwise pays postage charges for its mailings using its own prepaid permit.

From January 1984 through December 1989, ADVO charged some $36.8 million in postage for marriage mail and $7.59 million in postage for solo mail against its prepaid permit. The combined postage cost of $44.39 million was 48% of ADVO's gross revenues of $92.4 million.

The City audited ADVO for the period January 1984 through September 1988. The City assessed a deficiency of $645,290.74 against ADVO for that period under the advertising classification. ADVO paid $261,-284.91 of the assessment, but protested the balance of $384,005.83 because the gross income figure on which the City based its assessment included the portion of ADVO's gross receipts that it had used to pay mailing costs.

ADVO's protest was heard before a hearing officer of the City's Audit Department on January 8, 1991. At the hearing, the City and ADVO agreed to include a new assessment for the period October 1988 through December 1989 in ADVO's protest.

The hearing officer ruled that ADVO's business activities were within the Phoenix City Code's definition of "advertising" under both former section 14–1 and current section 14–405(a). He further held that ADVO's total collections on customer invoices that did not separately state postage charges consti-

tuted gross income from the business of advertising. The hearing officer also held that where ADVO's customer invoices separately stated postage charges, the portion of its receipts that corresponded to the postage charges did not constitute advertising gross income. Finally, the hearing officer held that ADVO failed to carry its burden of demonstrating that the advertising tax was inapplicable to sums from its business receipts that it expended for outside printing services. The hearing officer added:

> ... Furthermore we see no double taxation. The tax charged by printers is a tax on the printer[s'] business activities. Under former Code § 14–40(r), *e.g.*, the printer may have qualified for an exemption. Here, the assessment is on *this* Taxpayer's business activities.

The City issued an adjusted assessment in accordance with the hearing officer's ruling. ADVO paid the total due under the adjusted assessment under protest and brought this action for a refund pursuant to Phoenix City Code § 14–575. The City filed a counterclaim for recovery of the amounts originally assessed on which the hearing officer had found for ADVO.[1]

On cross-motions for summary judgment argued on September 22, 1992, the tax court ruled that ADVO's business activities constituted advertising within the City's privilege taxing provisions. The court further ruled:

> ... [ADVO's] gross revenues for the purpose of the measuring of the tax are not subject to a reduction for its mailing costs.
>
> ... [W]here the Taxpayer has paid a Phoenix transaction privilege tax on job printing, whether an in-city tax or a use tax for printing obtained out-of-city, it is entitled to a deduction from the gross revenues by which the City's tax is measured

to the extent of the cost to the Taxpayer of the printing upon which it has paid a tax.

The agreed upon facts in this case reflect that the City has given the Taxpayer a credit for in-city sales tax paid, but has given no benefit for use tax paid. The Court can see no distinction between the two taxes for purposes of a credit. Granting a credit for the tax paid, however, is not an appropriate recognition by the City of the tax previously paid. Since the tax on job printing is at a higher rate than the tax on advertising, a credit for the tax paid or the printing reduces the tax liability beyond the point where there is double taxation. For this reason a deduction from the gross income of the basis for the earlier tax is more appropriate.

The City filed a motion for reconsideration and/or clarification in November 1992. After a status conference in June 1993, the tax court stated it had not intended to distinguish between marriage mail and solo mail, and further:

> The Court also held that the taxpayer was entitled to consideration for printing taxes passed on to the taxpayer by the printer with whom it contracted. This is true regardless whether the printer paid the tax to the City of Phoenix or to some other taxing source. The transaction tax on printing imposed by the City of Phoenix is imposed at a higher rate than the transaction privilege tax imposed by the city on the taxpayer. For that reason, a credit of the tax paid would not be appropriate. The ruling of the court was that the taxpayer is entitled to a reduction from its gross revenues for printing on which it paid transaction privilege taxes at a rate as high as or higher than the transaction privilege tax on advertisers. Otherwise it is entitled to a reduction in the cost of printing that is proportionate to the differ-

1. Section 14–575 provides in relevant part:
   (b) The tax collector may seek judicial review of all or any part of a hearing officer's decision by initiating an action in the appropriate court of this county.
   (c) An action for judicial review shall not be commenced more than thirty days after receipt of notice by the taxpayer of any refund or assessment recalculated or reduced to conform

to the hearing officer's decision. Failure to bring the action within thirty days shall constitute a waiver of any right to judicial review, except as provided in subsection (f) below.
(f) After the initiating of any action in the appropriate court by either party, the opposite party may file such counterclaim as would be allowed pursuant to the Arizona Rules of Civil Procedure.

ence between the Phoenix advertising tax rate and the tax rate actually paid for the printing.

ADVO filed its own motion for reconsideration and/or clarification of the tax court's initial minute entry ruling on July 2, 1993. This motion was never heard. Instead, over three years later, the City lodged a form of judgment on which the parties jointly agreed. This was entered October 10, 1996. ADVO timely appealed and the City timely cross-appealed. We have jurisdiction pursuant to Arizona Revised Statutes Annotated section (A.R.S. § ) 12–2101(B).

## ANALYSIS

### STATUS OF ADVO's BUSINESS RECEIPTS PAID OUT FOR U.S. POSTAGE

#### *The Applicable Taxing Provisions*

Effective April 1, 1987, Phoenix City Code § 14–400(a)(1) imposes "a Privilege Tax upon persons on account of their business activities, to the extent provided elsewhere in this Article, to be measured by the gross income of persons, whether derived from residents of the City or not, or whether derived from within the City or from without."[2] Before April 1, 1987, former Phoenix City Code § 14–2 imposed a privilege tax in substantially similar terms. Current § 14–400 imposes a presumption that all gross income is subject to the tax until the taxpayer establishes the contrary.

2. Effective April 1, 1987, Phoenix City Code § 14–200 provided:
  (a) Gross income includes:
    (1) the value proceeding or accruing from the sale of property, the providing of service, or both.
    (2) the total amount of the sale, lease, license for use, or rental price at the time of such sale, rental, lease, or license.
    (3) all receipts, cash, credits, barter, exchange, reduction of or forgiveness of indebtedness, and property of every kind or nature derived from a sale, lease, license for use, rental, or other taxable activity.
    (4) all other receipts whether payment is advanced prior to, contemporaneous with, or deferred in whole or in part subsequent to the activity or transaction.
  (b) Barter, exchange, trade-outs, or similar transactions are includable in gross income at

Current Phoenix City Code § 14–405(a) levies a 0.5% privilege tax on "the business of 'local advertising' by billboards, direct mail, radio, television, or by any other means." Section 14–405(a) further provides that, except for six specific exclusions not applicable here, "[a]ll delivery or disseminating of information directly to the public or any portion thereof for a consideration shall be considered *'Local Advertising'*...." Before April 1, 1987, former Code § 14–2(a)(1) taxed "advertising," defined by former Code § 14–1 as "[t]he business of delivering or disseminating information directly to the public or any portion thereof for another for consideration by media doing business in the City." Former Code § 14–1 defined "media" as:

The person or business entity disseminating the advertising for compensation to the public, being the intended taxpayer hereunder. Media shall include newspapers, billboard companies, television or radio stations, handbill mailers or distributors and similar entities.

#### *The Merits*

ADVO contends the tax court erred in sustaining the City's determination to include in its local advertising tax base those of its business receipts during the audit period that it paid out in U.S. postage costs in mailing advertising materials for its customers. It correctly observes that a transaction or business privilege tax may be imposed only on gross income that is (1) actually earned by the taxpayer (2) from the business subject to the tax.[3] ADVO's central contention is that

the fair market value of the service rendered or property transferred, whichever is higher, as they represent consideration given for consideration received.
  (c) No deduction or exclusion is allowed from gross income on account of the cost of the property sold, the time value of money, expense of any kind or nature, losses, materials used, labor or service performed, interest paid, or credits granted.

3. Advo cites ten Arizona decisions in support of this uncontroversial proposition. We find it unnecessary to discuss any of them on that point. *See generally Ebasco Servs. Inc. v. Arizona State Tax Comm'n*, 105 Ariz. 94, 459 P.2d 719 (1969); Phoenix City Code §§ 14–200, 14–400(a), 14–405(a).

the service it performs for its customers in mailing their advertisements and advertisement packages via the U.S. Postal Service after having sorted and labeled them constitutes no part of the "local advertising" business activity subject to the City's tax. ADVO argues:

> ... The means of communicating an advertisement by mail ... is not part of the advertisement, and the funds collected and separately accounted for such mailing are not part of the gross income from the advertisement.
>
> ....
>
> ... ADVO does not create the message. ADVO merely disseminates messages created by its customers through its bundling and mailing activities. In this case, ADVO's "advertising" activities are its packaging, collating, addressing, and sorting of solo and marriage mail. ADVO's relationship with the USPS is such that revenues from mailing the message are distinct from any revenues generated in the packaging, collating, addressing, and sorting of the message. This mailing or postage revenue should not be taxed as advertising.

Opening Brief at 8, 11.

■ ADVO is mistaken. Its analysis is plausible only to the extent one accepts its implicit premise that the term "advertising" is to be accorded a narrow, colloquial meaning and not the broader one assigned to it in the Phoenix City Code. The Code does not restrict the business of local advertising to that of creating commercial messages and reducing them to a concrete form. Current Code § 14–405(a) expressly defines the taxable business of local advertising as "[a]ll delivery or disseminating of information directly to the public or any portion thereof for a consideration" "by billboards, direct mail, radio, television, or by any other means." Former Code § 14–2(a)(1) defined the business of "advertising" similarly. The portion of ADVO's business activities through which it makes its processed advertising materials available to members of the public by "direct mail," as a "handbill mailer[ ] or distributor[ ]," fits quite comfortably within these definitions.

Nevertheless ADVO contends that it was in reality a mere conduit for postage payments made by its customers. It argues:

> ... The City of Phoenix is, in essence, taxing postage paid by a customer merely because the customer pays ADVO to pass the money on to the USPS. If a customer had its own permit number and ADVO provides all other services, the City could not tax ADVO on the postage its customer paid to the USPS. Therefore, ADVO should not be taxed just because it collects the postage as an agent for the USPS.

Opening Brief at 12. We observe, however, that the record contains no evidence that any "conduit" or "agency" relationship actually existed between ADVO and the U.S. Postal Service or ADVO's customers.

The Arizona cases on point make it clear that on taxation questions form is sometimes as significant as substance. In *Ebasco Servs., Inc. v. Arizona State Tax Commission*, 105 Ariz. 94, 459 P.2d 719 (1969), Ebasco entered into a formal purchasing agent relationship with its client under which it purchased heavy equipment in the client's name for installation at a power generating station Ebasco was building for the client. The Commission assessed additional state transaction privilege taxes against Ebasco, taking the position that the client's payments for the equipment Ebasco had purchased as its agent constituted part of Ebasco's taxable contracting income. The supreme court disagreed, accepting Ebasco's analysis:

> ... Under the agency theory, materials and equipment are furnished by the owner for use by the contractor. Since there is no purchase by the contractor with an ultimate reimbursement by, or resale to, the owner, there is nothing received by the contractor in the nature of a "gross receipt" either in an accounting or in a tax sense.

105 Ariz. at 96, 459 P.2d at 721.

In contrast to the situation in *Ebasco*, ADVO was able to demonstrate no agency relationship either with the U.S. Postal Service or with its customers under which it could be viewed as a mere postage conduit. The record reveals only that ADVO paid

postage costs on its own account, billed its customers for its services and sometimes its postage costs, and later received payment.

ADVO's situation is closer to that of the taxpayer in *Brink Electric Constr. Co. v. Arizona Department of Revenue*, 184 Ariz. 354, 909 P.2d 421 (App.1995). In *Brink*, the tax court held that the Department of Revenue violated the taxpayer-contractors' equal protection rights in requiring a purchasing agency relationship between a contractor and an owner as a condition to allowing a retail transaction privilege tax exemption for equipment the taxpayers bought and incorporated into the owner's project. This court reversed. We stated:

> Although neither Brink nor Ball had purchasing agent agreements, they argue that they should be taxed as if they did. They argue that proceeds from their contracts attributable to large pipes and electrical transmission materials and equipment should be regarded merely as reimbursements by the project owners for procuring retail-tax exempt items. They contend that requiring such an agreement is arbitrary and a violation of their right to equal protection of the laws.
>
> . . . .
>
> Brink and Ball claim that the purchasing agent requirement has no rational basis. However, this presupposes the first step of the equal protection analysis, which is whether Brink and Ball were treated differently from other taxpayers. . . . They were not.
>
> . . . .
>
> Like any other contractor, Brink and Ball were free to take advantage of the retail exemption by including a purchasing agent agreement in their contract. We cannot hold that ADOR arbitrarily discriminated against them by refusing to allow them the exemptions in the absence of such an agreement.

184 Ariz. at 362, 909 P.2d at 429. Like Brink and Ball, ADVO is not entitled to be taxed as if its business were structured differently than it actually is.

ADVO contends in addition that those portions of its receipts from customers that it uses to pay postage charges should be excluded as a freight charge. ADVO reasons that its postage payments are analogous to a freight charge that is part of the sale but that the seller pays directly to the carrier and separately states on the contract or invoice, which A.C.A. R15–5–1820(a) provides is not part of the sales price. We disagree. A tax regulation is not a case law principle that may be applied beyond its origins by broad analogy. Its validity is circumscribed by statute, and it can apply only according to its terms. ADVO calls to our attention no similar or analogous provision of the Phoenix City Code. A.C.A. R15–5–1820(a) is wholly immaterial to this litigation.

ADVO also argues that its compensation from its customers for the mailing services it performs should be excluded from its gross income under *State Tax Commission v. Holmes & Narver, Inc.*, 113 Ariz. 165, 548 P.2d 1162 (1976). We recently applied *Holmes & Narver* in *City of Phoenix v. Arizona Rent–A–Car Sys., Inc.*, 182 Ariz. 75, 893 P.2d 75 (App.1995).

*Holmes & Narver* held that the taxpayer firm's receipts from performing design and engineering services on a job where it was also the prime contractor were not part of its gross income from the taxable contracting business. *Arizona Rent–A–Car Systems* held that the taxpayer's receipts from charges for refueling rental cars returned by its customers with less than a full tank constituted part of its gross receipts from the taxable short-term car rental business and not separate, non-taxable charges. Both cases applied a three-part analysis the supreme court developed in *Holmes & Narver*:

> . . . Where it can be readily ascertained without substantial difficulty which portion of the business is for non-taxable professional services (design and engineering), the amounts in relation to the company's total taxable Arizona business are not inconsequential, and those services cannot be said to be incidental to the contracting business, the professional services are not merged for tax purposes into the taxable

contracting business and are not subject to taxation.

113 Ariz. at 169, 548 P.2d at 1166.

The *Holmes & Narver* court defined "incidental" as "inseparable from the principal business and interwoven in the operation thereof to the extent that they are in effect an essential part of the major business. . . ." *Id.* at 168, 548 P.2d at 1165. In *Arizona Rent-A-Car Systems,* we found "integral to" equivalent to "incidental to" in *Holmes & Narver.* 182 Ariz. at 79, 893 P.2d at 79.

Here, the sums ADVO receives from its customers and spends on postage charges can be determined without substantial difficulty. Those sums are certainly not inconsequential in relation to ADVO's local advertising business in the City of Phoenix. Unlike the situation in *Holmes & Narver,* however, ADVO's mailing services are an integral part of its taxable business, both as a matter of fact and as a matter of definition under the Phoenix City Code.

City Code § 14–405(a) defines the local advertising business as including "[a]ll delivery or disseminating of information directly to the public or any portion thereof for a consideration" "by billboards, direct mail, radio, television, or by any other means." As we have held, the mailing component of ADVO's business falls squarely within that definition. Moreover, the ultimate end of the processing ADVO performs on its customers' advertisements is to configure, organize, and label them so that they may be conveyed rapidly and efficiently to the customers' market bases through the U.S. Postal Service. In view of that, it makes perfect sense to characterize the logical conclusion of ADVO's activities for a given customer—placing the processed advertisements in the hands of the U.S. Postal Service and funding their delivery—as an integral and essential part of its major business.

ADVO lastly contends, "The City of Phoenix imposes its transaction privilege tax on the postage ADVO pays the USPS for mailing without regard to whether that mail is addressed to locations outside of Phoenix. This violates the Model City Tax Code, a version of which the City of Phoenix adopted in 1987." Opening Brief at 16 (footnote omitted). As the City points out, ADVO never presented this contention in the tax court. Accordingly, we decline to address it for the first time on appeal.

### EFFECT OF ADVO's PAYMENT OF USE TAXES ON PRINTED MATERIALS AND INDIRECT PAYMENT OF JOB PRINTING TAXES INCURRED BY OUTSIDE JOB PRINTERS

On cross-appeal, the City contends the tax court erred in holding that ADVO was entitled to exclude from its local advertising gross income all sums it paid for outside job printing services where (1) the job printer passed along to ADVO a charge representing reimbursement for its own job printing privilege taxes, or (2) ADVO itself paid a Phoenix use tax for job printing that it obtained out-of-city.

Where ADVO buys a printing job from a subcontractor subject to a job printing privilege tax, ADVO's total cost for the job will likely include a charge designed to reimburse the job printer for the tax. As we understand the record, the City gave ADVO a credit for such reimbursements during the audit period when the job printing privilege tax was imposed on its subcontractor by the City of Phoenix.[4] Phoenix City Code § 14–425. It did not do so when the tax was imposed by any other governmental entity. The tax court held that where the job printing tax that ADVO's subcontractor passed through was at a rate "as high as or higher than" the City's advertising tax rate, ADVO was entitled to exclude from its advertising tax base a sum equal to the subcontractor's charge for the printing job. The tax court did not explain why this was so.

ADVO supports the tax court's ruling as follows:

> . . . The tax involved here is a transaction privilege tax, imposed upon the privilege of engaging in a transaction. A given print job is only a single transaction.

---

4. The City does not offer any explanation for this and we need not explore whether any legal ratio-nale for this credit existed.

Once a taxpayer has paid the highest tax the City imposes upon the privilege of engaging in that transaction, it is both unjust and unreasonable for the City to attempt to levy another tax on the same taxpayer for the same transaction, simply because that transaction also happens to fit one of the other broad definitions of activity subject to taxation under another section of the code.

Reply Brief at 5.

■ ADVO is wrong and the tax court erred. Regardless of the jurisdiction that imposes it, a job printing transaction privilege tax is a "tax" only to the job printer who is subject to it. The incidence of a job printing privilege or excise tax is on the job printer only. To the job printer's customer, the price of the printing job, including any privilege taxes passed through by the printer, is strictly a business expense. As we stated in *Carriage Trade Management Corp. v. Arizona State Tax Commission*, 27 Ariz. App. 584, 557 P.2d 183 (1976) in an analogous context:

> The transaction privilege tax is levied upon the person who is exercising the privilege of engaging in an enumerated business.... A.R.S. § 42–1302 allows the person or business to pass the tax levied upon them to their customers as any other cost is passed on. Therefore, each business in question is being taxed only once.

27 Ariz.App. at 587, 557 P.2d at 186.

In this case, ADVO uses the output of its subcontractors' printing jobs in its local advertising business. The amounts it pays its subcontractors for these printing jobs are among its business expenses. Phoenix City Code § 14–405(a) imposes a privilege tax on ADVO's "gross income" from the local advertising business. Section 14–200(c) provides:

> No deduction or exclusion is allowed from gross income on account of the cost of the property sold, the time value of money, expense of any kind or nature, losses, materials used, labor or service performed, interest paid, or credits granted.

The tax court's holding that ADVO was entitled to exclude from its advertising gross income amounts it paid for outside printing jobs lacked any foundation in the controlling taxing provisions and cannot stand.

The City's cross-appeal can also be read to challenge the tax court's holding that ADVO was entitled to exclude from its local advertising gross income all sums it paid for outside services that yielded printed materials on which ADVO later paid a Phoenix use tax. The City's argument includes the following references to the use tax:

> In those cases in which ADVO contracted with a third party printer and the printer did not charge a tax on job printing and ADVO did not self-assess, **the City of Phoenix assessed a use tax on ADVO for job printing.** Phoenix City Code Sections 14–600, 14–610, and 14–620 (Appendices P, Q & R).

> . . . .

> Rather than pay an advertising tax on its gross income, the taxpayer took the position at the administrative level that when a printer engaged by ADVO pays a tax on job printing to the City of Phoenix which it may pass on to ADVO **(or ADVO self assesses a use tax in those cases in which there is no tax on job printing in the state involved)** ADVO has complied with the City of Phoenix advertising tax. This is clearly not the case.

Answering Brief/Cross–Appeal Opening Brief at 24, 25 (emphasis added). The balance of the City's analysis focuses exclusively on ADVO's contention, which we have rejected above, that it was entitled to exclude from its local advertising tax base sums equal to payments for job printing services that included pass-through charges for the job printers' own business taxes. Thus, it effectively equates the job printing privilege tax and the use tax. ADVO's response does so as well.

Both the City and ADVO are mistaken in taking that approach. As we stated above, the incidence of the job printing tax is exclusively on the job printer. As passed along to ADVO, it is just another business expense—not a tax. In contrast, the City's use tax is an excise on the privilege of storing or using tangible personal property in the city, calcu-

lated on the property's cost.[5] Although the occasion for use tax liability arose from ADVO's purchase of printed materials from out-of-state job printing subcontractors, the incidence of the use tax was exclusively on ADVO.

Despite this distinction, ADVO was not thereby subjected to double taxation. In putting these printed materials to use in Phoenix, ADVO concurrently exercised two distinct taxable privileges. The first was the privilege of storing or using tangible personal property within the City on which a Phoenix retail privilege tax had not been paid. The second was the privilege of engaging in the business of local advertising within the City. ADVO's liability for both taxes is no more anomalous than, hypothetically, its concurrent liability for Phoenix local advertising taxes and for federal excise taxes on purchases of tires for trucks used to convey marriage-mail runs to the U.S. Post Office.

■ ADVO's use tax liability on printed materials prepared by out-of-state job printers was a cost of doing business. Phoenix City Code § 14–200(c) accordingly vitiates its claim that those portions of its gross income which it expended to meet that cost were not subject to taxation under City Code § 14–405(a). ADVO has called our attention to no contrary authority. None appears in the tax court's minute entry ruling. Our own research reveals none.

## CONCLUSION

The judgment is affirmed on ADVO's appeal and reversed on the City's cross-appeal. The matter is remanded to the tax court with directions to enter judgment in accordance with this opinion.

RYAN, P.J., and GARBARINO, J., concur.

---

942 P.2d 1196

**In re JOHN C.**

**No. 1 CA–JV 96–0215.**

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 7, 1997.

---

Richard M. Romley, Maricopa County Attorney by Linda Alauria, Deputy County Attorney, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Joel M. Glynn, Deputy Public Defender, Phoenix, for Appellant.

---

5. Where a person or business buys tangible personal property from a retailer who has separately charged the City's retail privilege tax in connection with the sale, the purchaser is not subject to the City's use tax. Code § 14–620.