**LEONARD v. UNITED STATES.**
No. 41876.

Court of Claims.
June 4, 1934.

296

Howe P. Cochran, of Washington, D. C., for plaintiff.

John W. Hussey, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff sues for a refund of $14,993 additional taxes for the calendar year 1919,

paid on June 20, 1927, in conformity with a decision of the Board of Tax Appeals, Appeal of Arthur H. Leonard et al., 4 B. T. A. 1221.

During the calendar year 1919 plaintiff was, and for several years prior thereto had been, a member of the partnership of Leonard & Barrows, engaged in the manufacture and sale of shoes, with plants at Middleboro, Mass., and Belfast, Me. Plaintiff had a 42½ per cent. interest in the partnership. By mutual agreement, entered into in writing, the partnership was dissolved as of December 31, 1919. The agreement provided that the plaintiff was to take over the plant at Belfast, Me., and his partners the plant at Middleboro, Mass. The agreement in substance provided for the distribution in kind of the other assets at values to be reckoned, after the payment of all liabilities of the partnership, the payment of capital accounts, and the adjustment of certain balances, on the basis of their respective interests in the partnership. To effectuate the dissolution of the partnership under the agreement a certified public accountant was employed to go over the books and draw up a balance sheet conformable to its terms. A balance sheet was accordingly prepared and approved by all the partners which afforded the basis on which the assets of the partnership were distributed. In preparing the balance sheet the accountant first took the assets and liabilities at their book values and in an effort to fix their actual liquidating values set up against them the following discounts and deductions:

1. Reserve for purchase discount $11,308.41
2. Reserve for sales discount .... 38,853.83
3. Accrued expenses .......... 4,000.00
4. Write-down on securities .... 2,816.00
5. Addition to reserve for bad debts ................. 700.00
6. Adjustment for prepaid taxes 3,512.51

    Total ................. 61,190.75
Less reserve for bad debts transferred to selling expense ..... 967.99

    Net total .............. 60,222.76

The Commissioner of Internal Revenue, in computing the partnership income for the year 1919, on the basis of the decision of the Board of Tax Appeals, deducted from gross income item 6, "Adjustment for prepaid taxes, $3,512.51," but made no deduction for any part of the other items amounting to $56,710.25. The plaintiff contends that this amount represents a shrinkage in the value of the partnership assets at the time of the dissolution and is a deductible loss under section 214 (a) of the Revenue Act of 1918 (40 Stat. 1066):

"That in computing net income there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business; * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business; * * *

"(7) Debts ascertained to be worthless and charged off within the taxable year."

If the plaintiff is right in his contention, he suffered a liquidating loss of 42½ per cent. of $56,710.25, based on shrinkage in the value of the partnership assets, and is entitled to recover the amount claimed, with interest from June 20, 1927, the date of payment. The question for determination, therefore, is whether the discounts and deductions claimed are legal deductions from gross income in computing the taxable income of the partnership for the year 1919.

The reserve of $11,308.41 for purchase discount comprises discounts available to the partnership at the end of the year 1919 on goods purchased by it and not yet paid for. The reserve of $38,853.83 for sales discount comprises discounts available to purchasers at the end of the year on goods purchased by them but not yet paid for. It is not possible from the record to determine whether these discounts were trade discounts or cash discounts. The only evidence on that question is the testimony of the accountant who prepared the balance sheet, who, on cross-examination, stated that the discounts were something that the firm as a purchaser, and the customers as purchasers, were entitled to under the trade customs. He also expressed the opinion that the books, without the discounts, did not represent the value of the property. It does not appear upon what facts these conclusions were based. This testimony, in our opinion, falls far short of establishing the fact that the reserves set up comprised trade discounts which represent the difference between a seller's list prices and the prices at which he actually sells goods to the trade, as distinguished from cash discounts which is a deduction from the price at which goods are billed to the purchaser that the seller allows for payment of the bill within a certain time. It is now well established that reserves for

298

cash discounts which may be taken in the future are contingent reserves and are not allowable deductions from gross income. Brown v. Helvering, 291 U. S. 193, 54 S. Ct. 356, 78 L. Ed. 725. On the other hand trade discounts are held to be deductible. In the absence of a showing that the discounts in question are trade discounts, it cannot be held that they are allowable deductions. Even if the reserves for purchase discount and for sales discount represented trade discounts, they are not properly allowable as deductions from gross income in computing the gain, profit, or loss, or income of the partnership for the year 1919 because like reserves for discounts on accounts payable and accounts receivable were not set up on the books at the beginning of the year. It is well settled that where inventories and accounts receivable and accounts payable are taken into consideration in determining profits or losses for a given year they must be placed upon the same basis at both the beginning and the close of the year. If this is not done, a distorted picture is presented, and the correct income for the year is not reflected by the books. The fact that the partnership was dissolved as of the close of the year does not change the situation. A deductible loss for the year arising from the dissolution cannot be established by setting up reserves for discounts at the close of the year when comparable reserves are not set up and carried on the books at the beginning of the year. The accounts receivable and accounts payable were received and paid by the liquidators during the year 1920. There is no proof that the partners suffered any loss in the liquidation of these accounts because of the dissolution of the partnership, or that they received less than their proportionate share of the accounts as they stood on the partnership books at December 31, 1919, before they were written down by the accountants. In any event no loss occurred in the year 1919 as the accounts were not liquidated until the year 1920. The decision of the Board of Tax Appeals in disallowing these deductions from gross income as a loss sustained during the taxable year 1919 is correct.

■ The item for "accrued expenses, $4,000," represents the estimated costs of attorneys' fees, accountants' charges, and other costs in connection with the dissolution of the partnership. These anticipated expenditures are purely speculative and contingent and are not allowable deductions from gross income. Appeal of Gude Bros., Kieffer Co., 2 B. T. A. 1029.

■ The item, "write-down on securities, $2,-816.00," represents the difference between the book value in 1919 of certain securities owned by the partnership and the amount received for them when sold in 1920. It is obvious that whatever loss occurred in the sale of these securities was deductible in the year of their sale, 1920, and not in 1919.

■ The remaining item of the deductions claimed, "addition to reserve for bad debts, $700.00," represents an estimate by the accountant of the accounts receivable on December 31, 1919, which might prove to be uncollectible. The Revenue Act of 1918 provided only for the deduction of "debts ascertained to be worthless and charged off within the taxable year," and not for "a reasonable addition to a reserve for bad debts," as was afterwards granted in the Revenue Act of 1921 (section 214 (a), 42 Stat. 239). The amount of the deduction claimed was neither ascertained to be worthless nor charged off the books during the taxable year 1919. It is therefore not an allowable deduction from gross income for that year. Spring City Foundry Co. v. Commissioner, 54 S. Ct. 644, 78 L. Ed. 1200, decided by the Supreme Court April 30, 1934.

The item "adjustment for prepaid taxes, $3,512.51," was allowed as a deduction by the Board of Tax Appeals and was not included in the partnership gross income by the Commissioner of Internal Revenue in his computation of the partnership taxable income. The plaintiff therefore makes no claim in respect to this item.

■ The balance sheet as of December 31, 1919, fixed the value of the assets of the partnership for the purpose of their distribution among the several partners. Aside from the accounts receivable the other assets of the partnership were distributed in kind. As to these assets the individual partners realized no gain or loss until they disposed of the property received in liquidation, article 1570; regulations 45 and 46. If the individual partners received from the liquidators in 1920, or subsequently, from the collection by them of the accounts receivable, a less amount than their proportionate shares of the accounts receivable as they stood on the books at December 31, 1919, before the write-down of such accounts by the accountant, they would have realized a deductible loss from such collection. The deduction, however, would have to be taken in the year when collection was made, not in 1919.

The plaintiff is not entitled to recover and the petition is dismissed. It is so ordered.