**357 P.2d 607**

**STATE TAX COMMISSION of Arizona et al., Appellants,**

v.

**RYAN–EVANS DRUG STORES, a corporation, Appellee.**

**No. 6584.**

Supreme Court of Arizona.

Dec. 21, 1960.

Rehearing Denied May 2, 1961.

Robert Morrison, former Atty. Gen., Bernard T. Caine, former Asst. Atty. Gen., Robert· G. Mooreman, former Asst. Atty. Gen., Wade Church, present Atty. Gen., Arthur E. Ross, Asst. Atty. Gen., for appellants.

Shimmel, Hill, Cavanagh & Kleindienst, Fennemore, Craig, Allen & McClennen, Phoenix, for appellee.

JENNINGS, Justice.

Pursuant to A.R.S. § 42–1339, Ryan-Evans Drug Stores, hereinafter referred to as appellee, brought suit to recover certain taxes paid under protest. The trial court entered judgment in favor of appellee for the sum of $3,839.43, together with costs. From this judgment the Arizona Tax Commission, hereinafter referred to as appellant, has appealed.

Appellee is a corporation duly organized and existing under the laws of the State of Arizona, and is and was at all times mentioned herein engaged in the retail drug business in the counties of Maricopa, Pinal, Gila and Pima of the State of Arizona. During the period from September 1, 1952 to June 30, 1955, the appellee used, in connection with and as a part of its retail business, the "Sperry & Hutchinson Co-operative Discount System." This trading stamp system was maintained and advertised by appellee under a written contract with Sperry & Hutchinson Company of New York, hereinafter referred to as the company. The company co-operative discount system as used by appellee was the ordinary trading stamp plan. Appellee issued to its customers the stamps which it had purchased from the company. The stamps were referred to as "S. & H. Green Stamps".

The stamps were issued and offered by appellee to those of its customers who paid cash for their merchandise or who promptly paid their monthly bills. Customers were issued stamps on the basis of one stamp for each ten cents of the purchase price paid, without regard to the kind or amount of merchandise purchased. The stamps were redeemable when presented by the customer at a store owned and conducted by the company, who furnished the stamps to the appellee. The company redeemed said stamps when the same were presented by customers at the stores of company on the basis of 2½ cents for each ten stamps or $3 per book of 1,200 stamps. According to the stipulation of counsel the stamps were not redeemed in cash but in merchandise.

Appellee maintained the theory that this stamp distribution to its customers was in the nature of a cash discount and during the said period from September 1, 1952 to June 30, 1955, the total amount of these purported "discounts allowed and taken" amounted to $173,730. On this premise appellee deducted such an amount from its gross sales during the period.

The Arizona State Tax Commission contended that such stamp payments were not "discounts allowed and taken on sales" within the meaning of § 73–1302, A.C.A.1939 (now A.R.S. § 42–1301(6), and that the trading stamp transaction was not a true discount of any sort, but rather a device or scheme designed to attract customers, induce sales and supplement advertising.

Under the Excise Revenue Act, the State Tax Commission of Arizona has the duty, obligation and right to levy and collect transaction privilege taxes, measured by the amount or volume of business transacted by persons on account of their business activities and in the amounts as determined by the rates set forth in the Act as applied to the "gross proceeds of sales" of a business. A.R.S. § 42–1309.

The Commission assessed a 2% tax under the authority of the Excise Revenue Act of 1935, § 73–1301 et seq., A.C.A.1939, now A.R.S. § 42–1301 et seq., against appellee on the theory that the transaction constituted retail sales within the scope of the Act.

The court below, without making any findings of fact as to the precise basis of its determination, entered judgment in favor of appellee. Hence this appeal.

■■■■■ There is only one issue in this case. That is whether trading stamps given by a retail merchant to his customer in order to stimulate sales volume constitute "cash discounts allowed and taken on sales" within the meaning of A.R.S. § 42–1301(6). The provision reads:

" 'Gross proceeds of sales' means the value proceeding or accruing from the sale of tangible personal property without any deduction on account of the cost of property sold, expense of any kind, or losses, but cash discounts allow-ed and taken on sales shall not be included as gross income."

It is presumed that all gross receipts of a business are subject to the taxes imposed under the Excise Revenue Act *until the contrary is established*. The reason for this presumption is twofold (1) to enable the proper administration of the Act, and (2) to prevent tax evasion. A.R.S. § 42–1329.

In resolving this problem the citations of authority made by both sides are of little or no value since, in the final analysis, it involves the interpretation of an Arizona statute. This Court has never been hesitant in dealing with new or novel problems in the law, nor has this Court ever stated that it will be bound by the decisions of other courts. The true purpose of the doctrine of stare decisis is thwarted when precedent is unrealistic or based on poor reasoning or expediency. This Court must only decide whether the Legislature of our State contemplated and intended trading stamps as "cash discounts allowed and taken".

It is true that since the filing of the briefs in this appeal, this Court has handed down its opinion in the case of State Tax Commission v. Consumers Markets, Inc., 87 Ariz. 376, 351 P.2d 654, 655. It is submitted by the appellee that the rationale of the Consumers decision supports the position taken by appellee herein, even though the precise point involved in the instant case (whether the giving of trading stamps constitutes a

cash discount) was not before the court in the Consumers case.

That this Court, in the Consumers case, had no occasion to consider the precise question presented in the instant case, is poignantly brought to focus in that case for the court's opinion makes clear, the parties in the Consumers case specifically stipulated "to the withdrawal of the issue whether plaintiff's trading stamp redemption plan constituted a cash discount as contemplated under A.R.S. paragraph 6 of § 42–1301." The issue presented in that case was whether the redemption transaction constituted a "sale" within the meaning of paragraph 11 of A.R.S. § 42–1301. Consumers did not claim a cash discount as they had paid sales taxes on the total amount of gross sales and took no deduction for trading stamps. Also Consumers was a "self-redeemer" of trading stamps whereas in the instant case the redemption is made by a third party, the Sperry & Hutchinson Company.

To facilitate the comparison of the two cases, let us reflect on the taxation procedure in the "Trading Stamp Transaction". Initially, the trading stamp company acquires the stamps from a supplier; thereafter, the company transfers them to a retail merchant; then the retailer issues the stamps to his customer; finally, the customer redeems them at a redemption store or center. Considering these four distinct transactions, it is evident that no tax is exacted on the trading stamp company's acquisition of the stamps. However, the company is subject to the Arizona sales tax when it sells its advertising services (stamps) to the retail merchant. A.R.S. Paragraph 2, subd. (h), § 42–1310. The tangible substance of trading stamps is not sold by the trading stamp company. In fact, the physical substance is ultimately returned to the redemption center. All that is sold to the retail merchant is an advertising service. The retail merchant who purchases this service, evidenced by stamps, is the agent or licensee of the trading stamp company and, in furtherance of such advertising program, issues the stamps to the public. Thus, consumption or use of the stamps cannot be attributed to him in his own independent capacity. When the retail merchant hands trading stamps to a customer, he transfers to the latter intangible property consisting of a claim against the trading stamp company. The customer is clothed with the right to demand a "premium". This transfer of claim is not subject to the Arizona sales tax since the sales tax is imposed solely on the "business of selling any tangible personal property whatever at retail". The final transaction—the stamp redemption—may be characterized as a transfer of tangible personal property in satisfaction of a claim evidenced by trading stamps. The trading stamp companies acquire merchandise called "premiums" which are subsequently transferred to the public in satis-

faction and redemption of stamps. The stamps represent a chose in action and, in their capacity to command premiums, are analogous to promissory notes of limited negotiability. It is perhaps significant that certain stamp book catalogs contain a printed schedule indicating the proper penny-amount of tax to be charged the redeemer under sales taxes of different rates "in states where applicable."

Arizona does not tax the redemption transaction, as most other states imposing a sales tax do, but it subjects the trading stamp company to a use tax upon acquisition of the "premium" merchandise. In effect, the State Tax Commission treats the trading stamp company as the consumer of such merchandise and considers the "premium" as a gift or advertising bonus.

The foregoing analysis clearly shows that the appellee is not being subjected to double taxation. Our Sales Tax Act is imposed upon various business activities at varying rates. A.R.S. § 42–1312 imposes a sales tax on the retailer and A.R.S. § 42–1310 on the advertising business. In both cases, the tax is measured by gross income from sales. Therefore, what appellee believes is double taxation is actually two separate and distinct levies under the same Act. Furthermore, the impositions are on two separate and distinct entities. Moreover, it is the opinion of this Court that the Consumers case lends no support to appellee's position, for this Court held that the redemption transaction was not in fact a sale. Therefore, its rationale rather lends credence to appellants' contention that the "premium" merchandise is in effect a bonus for patronizing appellee's stores and the cost of the S. & H. green stamps are a business expense, not a cash discount.

In the case of Standard Oil Co. v. State et al., 283 Mich. 85, 276 N.W. 908, 910, the term cash discount is interestingly illustrated. Quoting from Regulation No. 7 of The Department of Taxation and Finance of the State of New York, the Supreme Court of Michigan states:

"* * * in the case of a cash discount, the seller gives the buyer an option to pay either one of two prices, viz.: The price less discount if paid within a specified time or the price without discount if not paid within such time. For instance, if A sells to B a bill of goods for $100, net thirty days, with two per cent off for cash in ten days, B may choose which option or price he will select. If he pays in ten days, A accepted $98 as the selling price of the goods and that is the sum which should be included by A in taxable receipts. If, on the other hand, B elects not to pay in ten days, the selling price is $100 and that is the sum which A must include in receipts."

Also in the Leonard v. United States, 7 F.Supp. 295, 297, 79 Ct.Cl. 705, the court defined "cash discount" as:

"* * * a deduction from the price at which goods are billed to the purchaser that the seller allows for payment of the bill within a certain time."

We have fully considered the rule of statutory construction that statutes imposing taxes will be most strongly construed against the government and in favor of the taxpayer or citizen. Arizona Tax Commission et al. v. Dairy & Consumers Co-operative Association, Ariz., 70 Ariz. 7, 215 P.2d 235, 242; Alvord et al., v. State Tax Commission, 69 Ariz. 287, 213 P.2d 363; and that any doubts as to their meaning are to be resolved against the tax authority and in favor of the taxpayer. General Petroleum Corporation of California v. Smith et al., 62 Ariz. 239, 157 P.2d 356, 158 A.L.R. 364.

Notwithstanding this, however, we are constrained to hold that by using the words "cash discount" our Legislature has limited discount exclusions to those of cash only. If any other meaning were intended the statute would obviously have been worded differently. It seems unrealistic that the Legislature, without expressly considering the various promotional schemes, could have meant that they be valid deductions. The Legislature has only said "cash discounts allowed and taken" are not taxable. This simply means cash discounts, that is, an actual cash reduction in price for prompt payment. It is an inescapable conclusion that the Legislature did not intend to tax the retailer on money he did not receive; but on the other hand, the Legislature did not intend to allow the retailer to pay tax on something less than that which he did receive. To hold that "green stamps" are a "cash discount" would accomplish this. The obvious fact is that the company's plan is a promotion scheme designed to induce the public to purchase merchandise from its dealers exclusively, and it appears that even though the company calls its elaborate plan a "co-operative cash discount system", in reality, it is nothing more than a bonus or unique and attractive form of advertising and as such constitutes an ordinary business expense.

It must necessarily follow that in the opinion of this Court "green stamps" are not a cash discount under the Arizona Transaction Privilege Taxes Act, A.R.S. § 42–1301 et seq., and the cost of the stamps cannot be deducted from the "gross receipts" in computing the amount of sales tax owed to the State of Arizona.

We are not unmindful of Eisenberg's White House v. State Board of Equalization, 72 Cal.App.2d 8, 164 P.2d 57, but in the light of our conclusions the reasoning therein is not persuasive.

For the foregoing reasons, the order and judgment of the trial court is reversed.

STRUCKMEYER, C. J., BERNSTEIN and UDALL, JJ., and LORNA E. LOCKWOOD, Superior Court Judge, concurring.

**24**

NOTE: Justice M. T. PHELPS and Justice ROBERT O. LESHER having disqualified, the Honorable LORNA E. LOCKWOOD and the Honorable RENZ L. JENNINGS, Maricopa County Superior Court Judges, were called to sit in their stead.

Justice JENNINGS qualified as Justice of the Arizona Supreme Court on December 12, 1960.