533 P.2d 84

**NEW CORNELIA COOPERATIVE MERCANTILE COMPANY, an Arizona Corporation, Appellant,**

v.

**ARIZONA STATE TAX COMMISSION, a body and corporate politic, and Robert Kennedy, John M. Hazlett and L. Waldo DeWitt, as members and constituting said Arizona State Tax Commission, Appellees.**

**No. 2 CA–CIV 1735.**

Court of Appeals of Arizona,
Division 2.
March 24, 1975.

paid in sales and education excise taxes to defendants. The matter was submitted to the court on stipulated facts and motions for summary judgment. Upon denial of appellant's motion for summary judgment and entry of summary judgment for appellees, this appeal was filed.

Appellant-taxpayer, operated a general merchandise store in Ajo, Arizona. A large percentage of its sales were credit purchases by employees of the Phelphs Dodge Corporation and its affiliated companies. Each year in December, appellant paid the employee credit customers a cash rebate based upon the total purchases for the year by the particular employee.

The rebate policy was formalized in appellant's board of directors meeting in July 1955. Notice of the rebate policy has been conspicuously placed in appellant's store ever since. Appellant agreed under its rebate policy to pay employee customers a pro rata share of the total rebate based on the amount of credit purchases by the employee during the year in which the rebate was paid. Rebates were calculated as follows:

"An amount equal to all profits made by the corporation, less an estimated amount for payment of income taxes during the year in which the rebate is made, less, dividends of six percent upon the par value of all outstanding stock of the corporation and less an amount to provide additional working capital equal to one half percent of the total sales made by the corporation for the year in which the rebate is paid." (Per appellant's corporate resolution of July 11, 1955).

The sum of the rebate for the years in question varied from $318,631 to $346,779 and was paid to approximately 1,400 employees, over eighty percent of the store's customers.

Appellant, in computing its sales tax liability, deducted from each year's December gross receipts the sums returned.

Appellees' auditors, considering the period May 1, 1969 through February 29, 1972,

Bilby, Thompson, Shoenhair & Warnock, P. C., by David W. Richter, Tucson, for appellant.

N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen., by Ian A. Macpherson, Asst. Atty. Gen., Phoenix, for appellees.

OPINION

HATHAWAY, Judge.

Pursuant to A.R.S. § 42–1339 et seq., appellant brought suit to recover $30,273.12

determined that such rebates were not proper deductions for purposes of computing sales and educational excise tax liability. After petition and hearing, the additional tax assessment in the sum of $30,273.12 was paid under protest and this lawsuit followed.

The question presented by this appeal is whether the sums returned by appellant to its employee credit customers were "cash discounts" as that term was used in A.R.S. § 42–1301(6) and, accordingly, not subject to the transaction privilege (sales) tax. A.R.S. § 42–1301(6), as amended 1973, defines "gross proceeds of sales," the basis for the computation and levy of the transaction privilege tax, as:

" . . . the value proceeding or accruing from the sale of tangible personal property without any deduction on account of the cost of property sold, expense of any kind, or losses, but *cash discounts allowed and taken on sales* shall not be included as gross income."

(Emphasis added)

It is apparent that "gross proceeds of sales" and "cash discounts" are based on "sales," defined in A.R.S. § 42–1301(11), as amended 1973, as:

" . . . any transfer of title or possession, or both, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatever, of tangible personal property, for a consideration, and includes:

(a) any transaction whereby the possession of property is transferred but the seller retains the title as security for the payment of the price."

■ The credit purchases serving as the basis for computing rebates, fall within the definition of "sale" under A.R.S. § 42–1301(11), and appear to be treated by the parties as sale transactions. The rebates in question were not made until long after the sale transactions. Under appellant's theory, a taxable event occurring in January would have to wait the computation of the corresponding tax liability until December to take into consideration the rebates as a "cash discount."

The rebates do not qualify as a "cash discount" as contemplated within the statutory scheme of the assessment, computation and collection of transaction privilege taxes. A.R.S. § 42–1322 provides for a monthly calculation and payment of the tax as follows:

"A. The taxes levied under this article shall be due and payable monthly on or before the fifteenth day of the month next succeeding the month in which the tax accrues, and shall be delinquent five days thereafter.

B. The taxpayer shall on or before the fifteenth day of the month prepare a return showing the amount of the tax for which he is liable for the preceding month, and shall mail the return together with a remittance, in the form required by § 42–1323, for the amount of the tax, to the department. The return shall be verified by the oath of the taxpayer or an authorized agent."

■ There is a statutory presumption that all gross receipts of a taxpayer are subject to the transaction privilege tax until the contrary is established. A.R.S. § 42–1329. Trading stamps given to stimulate sales did not represent a "cash discount" within the purview of the transaction privilege tax act, and the cost of the stamps could not be deducted in computing the amount of sales tax. State Tax Commission v. Ryan-Evans Drug Stores, 89 Ariz. 18, 357 P.2d 607, 90 A.L.R.2d 332 (1960). In that case, the court, discussing the term "cash discount," stated:

" . . . by using the words 'cash discount' our Legislature has limited discount exclusions to those of cash only. If any other meaning were intended the statute would obviously have been worded differently. It seems unrealistic that the Legislature, without expressly considering the various promotional schemes, could have meant that they be valid deductions. The Legislature has only said 'cash discounts allowed and

taken' are not taxable. This simply means cash discounts, that is, *an actual cash reduction in price for prompt* payment. It is an inescapable conclusion that the *Legislature did not intend to tax the retailer on money he did not receive; but on the other hand, the Legislature did not intend to allow the retailer to pay tax on something less than that which he did receive."* 89 Ariz. at 23, 357 P.2d at 610. (Emphasis added)

See also, Park Central Development Co. v. Roberts Dry Goods, Inc., 11 Ariz.App. 58, 461 P.2d 702 (1969).

▪ Deductions and exemptions are not to be implied. They must exist, if at all, within a specific statutory grant. Gietz v. Webster, 46 Ariz. 261, 50 P.2d 573 (1935); J. H. Welsh & Son Contracting Company v. Arizona State Tax Commission, 4 Ariz.App. 398, 420 P.2d 970 (1966).

▪ Tax liability accruing on a monthly basis, as the transaction privilege tax, may not be determined, in the absence of specific statutory authority, by deducting distributions to customers occurring after the completion of the sales, and paying the transaction privilege tax on the sales involved, and, in effect, work a refund of such tax payments on an annual basis.

Appellant's rebate policy is clearly a profit-sharing benefit conferred upon its employee credit customers. The rebates appear to include profits from sale transactions with other customers not included within the class benefitting under the rebate policy. The profit from which the rebates were made could not have resulted without the sales transactions upon which the transaction privilege taxes were computed.

▪ Appellant's assertion that the tax commission seeks to tax the miners on merchandise they never purchased is totally inaccurate. The liability for the tax is the personal liability of the seller. The tax is based upon the privilege extended to the seller to engage in the business of selling tangible personal property. Arizona State Tax Commission v. Garrett Corpora-

tion, 79 Ariz. 389, 291 P.2d 208 (1955). As has been observed, the tax is computed upon the "gross proceeds of sales." Whether the seller makes a profit, chooses to share his profit with someone else or sustains a loss is of no consequence. A.R. S. § 42–1301(6), as amended 1973, defining "gross proceeds of sales," specifically provides that no deduction is to be made in the computation "on account of the cost of property sold, expense of any kind, *or losses*, . . ."

We find that appellant's view of the statutes involved is not in keeping with the statutory scheme of monthly accrual of the taxes in question, and the authorities cited by appellant are inapposite. For the reasons given, we conclude that the rebates do not qualify as "cash discounts" under the statute and we affirm the judgment of the trial court.

Affirmed.

HOWARD, C. J., and KRUCKER, J., concur.