IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

DOVE MOUNTAIN HOTELCO, LLC, et al., *Plaintiffs/Appellants*,

*v.*

ARIZONA DEPARTMENT OF REVENUE, *Defendant/Appellee*.

No. 1 CA-TX 22-0003
FILED 6-8-2023

———————————————

Appeal from the Arizona Tax Court
No.  TX2019-000448
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

———————————————

COUNSEL

Snell & Wilmer LLP, Phoenix
By Barbara J. Dawson, Edward J. Hermes
*Co-Counsel for Plaintiffs/Appellants*

Reed Smith LLP, Chicago Illinois
By David P. Dorner, admitted *pro hac vice*
*Co-Counsel for Plaintiffs/Appellants*

Arizona Attorney General's Office, Phoenix
By Scot G. Teasdale
*Counsel for Defendant/Appellee*

---

**OPINION**

Judge Jennifer B. Campbell delivered the opinion of the Court, in which Judge Paul J. McMurdie joined. Presiding Judge Brian Y. Furuya dissented.

---

**C A M P B E L L**, Judge:

¶1        Dove Mountain Hotelco, LLC and HSL Cottonwood RC Hotel, LLC (collectively, Dove Mountain) appeal from the tax court's judgment upholding the Arizona Department of Revenue's (the Department) determination that Dove Mountain owes transaction privilege taxes on monies (the monies) it received from a third party through a rewards program. Because the monies constitute gross income and no deduction applies, we affirm.

**BACKGROUND**

¶2        The relevant facts are not disputed. Dove Mountain, a Marriott-branded hotel, participates in the Marriott Rewards Program (the Rewards Program)—Marriott's points-based loyalty marketing program, operated and administered by Marriott Rewards, LLC. "[D]esigned to foster long-term brand loyalty and increase repeat lodging at Marriott branded hotels," the Rewards Program permits hotel guests who register with the Rewards Program (members) to earn points from their paid stays at Marriott-branded hotels. Apart from paid hotel stays, members may also earn points "by booking travel with [a] participating program airline, car rental or cruise companies, from dining at participating program restaurants, and from credit card purchases using participating program credit cards." Members earn approximately three-fourths of the Rewards Program points through paid stays at Marriott-branded hotels and the remaining points through their transactions with Marriott's affiliated partners. The members may redeem their accrued points for free stays at Marriott-branded hotels, or for other items such as merchandise, airline tickets, car rentals, and gift cards.

¶3        All Marriott-branded hotels participate in and fund the Rewards Program by paying a percentage of their room revenue to cover the Rewards Program costs and allowing members to redeem their points for free lodging. Specifically, Dove Mountain remits 4.5% of each member's paid hotel stay to Marriott Rewards, LLC. When members redeem points

for free stays, Dove Mountain requests money from the Rewards Program to cover the costs of the complimentary lodging, but its compensation is not limited to its 4.5% remittance to the program.

**¶4** After paying transaction privilege taxes on the monies it received from the Rewards Program between April 1, 2012 and March 31, 2016, Dove Mountain sought a refund from the Department, contending it "mistakenly" paid taxes on "reimbursements." The Department denied Dove Mountain's refund request.

**¶5** Dove Mountain appealed the Department's decision in the tax court. Asserting it "paid tax on the lodging at the time the Rewards points were earned," Dove Mountain claimed that imposing the transaction privilege tax on the monies it received from the Rewards Program amounted to double taxation. On cross-motions for summary judgment, Dove Mountain limited its refund claim to the 4.5% it remitted to the Rewards Program.

**¶6** After full briefing and oral argument, the tax court granted summary judgment in favor of the Department. Upon entry of final judgment, Dove Mountain timely appealed.

## DISCUSSION

**¶7** Challenging the tax court's summary judgment ruling, Dove Mountain contends that the monies are not subject to Arizona's transaction privilege tax "for one simple reason"—because the underlying free stays were mere "redemptions of reward points from prior transactions on which tax was previously paid." With this framing, and wholly relying upon *State Tax Commission v. Consumers Market*, 87 Ariz. 376 (1960), Dove Mountain argues that: (1) the monies do not qualify as taxable income or proceeds, and (2) imposing transaction privilege tax on the monies constitutes double taxation.

**¶8** We review the tax court's grant of summary judgment de novo. *SWAT Training Facilities LLC v. Ariz. Dep't of Revenue*, 251 Ariz. 269, 272, ¶ 5 (App. 2021). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).

**¶9** We also review de novo the tax court's construction and application of statutes. *Ariz. Dep't of Revenue v. Ormond Builders, Inc.*, 216 Ariz. 379, 383, ¶ 15 (App. 2007). "When construing a tax statute, we give words their plain and ordinary meaning." *SWAT Training*, 251 Ariz. at 273,

3

¶ 8. "If the statute is unambiguous, we apply it as written without further analysis." *Id.*

¶10        Arizona imposes an excise tax on persons and entities engaging in business within the State under certain business classifications. A.R.S. § 42-5008. Under A.R.S. § 42-5070(A), businesses operating hotels for transient occupancy are subject to transaction privilege tax under the transient lodging classification. *See also* A.R.S. § 42-5010(A)(2)(a).

¶11        The transaction privilege tax "is not a sales tax, but a tax on the gross receipts of the [taxpayer's] business activities." *SWAT Training*, 251 Ariz. at 272, ¶ 6 (alteration in original) (quotation omitted). "The tax is levied upon the business the taxpayer conducts, and 'it is presumed that all gross proceeds of sales and gross income derived by a person from business activity classified under a taxable business classification comprise the tax base for the business until the contrary is established.'" *Id.* (quoting A.R.S. § 42-5023); *see also* A.R.S. § 42-5070(C) ("The tax base for the transient lodging classification is the gross proceeds of sales or gross income derived from the business . . . .").

¶12        Dove Mountain argues, and the Department concedes, that a business's offer of *free* goods or services to customers as a reward for their patronage adds no gross income or proceeds to the business's tax base. But rather than providing free or prepaid hotel stays, the Department contends that Dove Mountain participates in a third-party marketing program that provides full compensation for "free" stays offered to members.

¶13        As statutorily defined, "'gross income' means the gross receipts of a taxpayer derived from trade, business, commerce or sales and the value proceeding or accruing from the sale of tangible personal property or service, or both, and without any deduction on account of losses." A.R.S. § 42-5001(4). "Gross receipts," in turn, "means the total amount of the sale, lease or rental price . . . including any services that are a part of the sales, value in money, whether received in money or otherwise, . . . without any deduction from the amount on account of the cost of the property sold, materials used, labor or service performed, interest paid, losses or any other expense." A.R.S. § 42-5001(7).

¶14        With these broad definitions in mind, we consider the transactions at issue. Dove Mountain received the monies from the Rewards Program to cover the cost of providing complimentary lodging to members. Although the members paid no money for their "free" stays, Dove Mountain nonetheless received the full value of the lodging. *See*

A.R.S. § 42-5070(F) (defining "transient" for purposes of the transient lodging classification as "any person who either at the person's own expense or at the expense of another obtains lodging space or the use of lodging space."). Because Dove Mountain derived the monies from a transient lodging business transaction, they fall within the plain meaning of "gross income" and "gross receipts," as those terms are statutorily defined. And, as Dove Mountain concedes, no statutory deduction permits a hotel to deduct business expenses or losses when calculating gross income or gross receipts.

¶15 Despite receiving full payment for the value of its complimentary lodging to members, Dove Mountain asserts that the monies cannot be included in its tax base because it already paid transaction privilege taxes on the 4.5% of members' paid lodging that it remitted to Marriott Rewards, LLC. According to Dove Mountain, imposing transaction privilege tax on the monies results in double taxation.[1]

¶16 "[D]ouble taxation is presumed not to be within the intent of a legislative body." *US W. Commc'ns, Inc. v. City of Tucson*, 198 Ariz. 515, 524, ¶ 32 (App. 2000). Double taxation occurs when "the same property or person is taxed twice for the same purpose for the same taxing period by the same taxing authority." *Id.* at ¶ 33 (quotation omitted).

¶17 Dove Mountain relies solely on *Consumers Market* to support its double taxation claim. In that case, a grocery store chain issued stamps to customers who purchased groceries at its stores, allowing those customers later to exchange the stamps for "free" merchandise. *Consumers Market*, 87 Ariz. at 377-78. Because the grocery store chain marked-up the price of merchandise sold in the regular course of business to cover the cost of the "free" merchandise exchanged to redeem the stamps, and the stores received no new revenue when the stamps were redeemed, the supreme court characterized these retail transactions, *see* A.R.S. § 42-5010(A)(1)(*l*) (subjecting retail transactions to the transaction privilege tax), as "a system of advanced spending and deferred enjoyment of the fruits thereof by the [grocery store chain]'s customers." *Consumers Market*, 87 Ariz. at 377-79. Reasoning that the price of the "free" merchandise had already been "included in the gross sales of the business" through the increased cost of regular goods and therefore subjected to the transaction privilege tax, and

---

[1] At oral argument, Dove Mountain conceded that approximately a quarter of the points earned (through members' transactions with Marriott's affiliated partners) and then redeemed for complimentary lodging are subject to the transaction privilege tax.

considering that the grocery store chain, itself, redeemed the stamps, distributed the free merchandise, and could trace all monies in and out of the program as its sole administrator (a self-contained marketing scheme), the supreme court concluded that imposing transaction privilege tax on the value of the "free" merchandise exchanged to redeem the stamps "amount[ed] to double taxation." *Id.* at 380.

¶18 *Consumers Market* is readily distinguishable from this case. Although Dove Mountain asserts that members "already paid" for their "free stays" in "the price of [their] prior purchases," characterizing the program as a system of advanced purchasing for a deferred benefit analogous to the trading stamp system in *Consumers Market*, it offers no evidence to support this contention, and our review of the record reveals none. To the contrary, the Department's auditor, in her signed declaration, avowed that Dove Mountain provided no "business records showing that [its 4.5% remittance to the Rewards Program] had any effect on pricing of rooms." Meaning, unlike *Consumers Market*, no evidence supports a finding that the members' paid hotel stays included a built-in mark-up such that any tax otherwise due on gross receipts from the subsequent "free stays" had already been paid. Also, unlike the retail transaction classification at issue in *Consumers Market*, the tax imposed here falls within the transient lodging classification with the associated requirements and exemptions. *See* A.R.S. § 42-5070.

¶19 Moreover, unlike the grocery store chain in *Consumers Market*, which essentially retired debts by redeeming its customers' stamps, here, Dove Mountain received additional compensation for providing complimentary lodging to members. Had Dove Mountain provided the free accommodation and not sought payment from Marriott Rewards, LLC, there would have been no additional gross receipts to tax. But the Rewards Program has an "intermediary structure"—Dove Mountain pays a premium to belong to the Rewards Program and provides the free stays, and Marriott Rewards, LLC redeems the points and compensates the hotel for complimentary lodging.

¶20 Notably, Dove Mountain admits that it remitted 4.5% of the revenue from members' paid hotel stays to Marriott Rewards, LLC to pay for a "marketing program." Throughout its briefing, Dove Mountain likewise acknowledges that at least some of its remittance to Marriott Rewards, LLC paid for "marketing and administrative costs." But Dove Mountain fails to quantify what portion of its 4.5% remittance, if any, remains after subtracting marketing and administrative costs.

¶21 The Dissent equates Dove Mountain's 4.5% remittance to the Rewards Program with reserves or savings. But this framing does not square with Dove Mountain's concession that the monies it receives from the Rewards Program above its 4.5% remittance—compensation for free stays in excess of the annual Rewards Program premium—is taxable income. The converse is also true, when a Marriott-branded hotel does not provide enough complimentary stays in a given year to receive compensation equal to its Rewards Program remittance, it is not entitled to reimbursement for excess payment. To be clear, Dove Mountain's remittance to the Rewards Program is just that, payment for membership in the Marriott Rewards Program. Compensation from the Rewards Program for extending complimentary stays to members is a benefit of the program and part of the Marriott-branded hotels' gross receipts for transaction privilege tax purposes.

¶22 Simply put, Dove Mountain has failed to demonstrate that the monies it received from Marriott Rewards, LLC to compensate for the cost of members' complimentary lodging were already subjected to the transactional privilege tax. In other words, on this record, there is no basis to conclude that members prepaid for their complimentary hotel stays through built-in mark-ups that were already taxed. Accordingly, we conclude the superior court did not err by granting summary judgment in favor of the Department.

## CONCLUSION

¶23 For the foregoing reasons, we affirm.

**F U R U Y A**, Judge, dissenting:

¶24 In my view, this case turns on the character of the funds the Rewards Program distributes out to Dove Mountain, specifically, whether those funds are new income or rather a disbursement of post-tax reserves that happen to be administered by a third party. Because I see the funds in question as equivalent to post-tax reserves that are held and released by the Rewards Program for future use—and therefore not new income that would be subject to additional taxation—I respectfully dissent.

## I. The Rewards Program's Disbursements to Dove Mountain Are Not New Income, But Equivalent to Reserves.

¶25         The majority opinion concludes the funds disbursed to Dove Mountain on a reimbursement claim are entirely new income. If this conclusion is taken as given, then all money Dove Mountain receives from the Rewards Program qualifies as "gross receipts," and the majority opinion's analysis and conclusion must follow. But I do not agree with this premise.

¶26         While unquestionably broad, the definition of "gross receipts" does not include reserves, savings, or other post-tax, pre-paid funds that are later accessed or recouped at some future point to cover costs experienced at that time. *See* A.R.S. § 42-5001(7). Thus, if the disbursements Dove Mountain receives out of the Rewards Program are not new consideration, but instead are a release of amounts contributed previously by Dove Mountain—being merely held by the Rewards Program for Dove Mountain's future use—then those funds are more properly characterized as equivalent to reserves or savings, not new income.

¶27         Here, the record indicates the disbursed funds at issue are entirely constituted from post-tax hotel revenues from prior member stays. The evidence establishes that Dove Mountain, like other Marriott-branded hotels, reserves 4.5% of such post-tax revenue and remits it to the Rewards Program. The Rewards Program aggregates all such contributions from participating hotels, like Dove Mountain, and holds these funds, using a portion for administration and marketing expenses. The remainder is used to reimburse participating hotels, Dove Mountain included, when they make claims for disbursement after they provide free stays to Rewards Program members. Because the source of the funds is from post-tax hotel revenues, I see them as more accurately treated as reserves or savings that Dove Mountain and other participating hotels store with the Rewards Program for deferred receipt and use. Thus, I do not agree the funds Dove Mountain receives from the Rewards Program to cover free stays are "income" under A.R.S. §§ 42-5070 and -5001(4), (7), and I would reverse the superior court's grant of summary judgment to the Department.

## II. Dove Mountain's Reimbursements from the Rewards Program Are Not Sales.

¶28         The majority opinion concludes the money Dove Mountain receives from the Rewards Program qualifies as "gross receipts" because it views these remittances as payment for Rewards Program members' free

stays. The majority opinion essentially treats the Rewards Program as a third-party payer that covers members' stays as new sales transactions. But this conclusion disregards the evidence showing the Rewards Program is using the participating hotels' own, post-tax money to cover the disbursement requests. In my view, unless reason exists to support transmutation of the post-tax reserves into separate assets sufficient to make the disbursements new income, they retain their original character and cannot qualify as "gross receipts" from new sales.

III.     **Use of Post-Tax Contributions Held by the Rewards Program for Marketing Purposes Does Not Transmute Them into New Consideration.**

¶29        The majority opinion reasons that the money Dove Mountain receives from the Rewards Program is includable within Dove Mountain's tax base as "gross income" because Dove Mountain's remittances are really payment for marketing services. The majority opinion equates Dove Mountain's tax refund request to a request for an exemption for marketing expenses. But I do not believe the evidence supports such a conclusion.

¶30        It is undisputed that Dove Mountain's remittances do, to some extent, cover marketing costs the Rewards Program undertakes for Dove Mountain's benefit, among others. Further, Dove Mountain's counsel stated during oral argument that, based upon the points that members earn by means other than via hotel stays, such marketing costs were limited to approximately 24% of participating hotels' contributions. Dove Mountain's counsel also conceded that this 24% could be excluded from its tax refund request. And the record establishes that the remaining 76% of the hotels' contributions are held to cover disbursement requests by participating hotels for free stays.

¶31        Certainly, the 24% portion of the contributions could be considered payment for marketing services. But the majority opinion does not explain how or why mere use of this limited part of the contributions for marketing costs causes the remaining 76% to lose their character as post-tax reserves. Again, the evidence shows all funds the Rewards Program remits to Dove Mountain originate as post-tax revenues the Rewards Program received from participating hotels for member stays. No evidence was provided suggesting the Rewards Program has any other source of income. Thus, 100% of the funds that the Rewards Program uses for all its activities—administration, marketing, *and* disbursements to participating hotels to cover free stays—are paid exclusively out of these contributions.

¶32      I do not agree that using part of the post-tax reserves for marketing and administration purposes is sufficient to transmute the remaining part into new, non-post-tax income. Whatever else the Rewards Program may do with Dove Mountain's contributions is not germane to the nature and character of the remaining funds as post-tax reserves. And I can discern nothing in the record or from counsels' statements at oral argument indicating that Dove Mountain's contributions are transmuted into new consideration sufficient to qualify as "gross income."

IV.     **Use of a Third-Party Intermediary Does Not Transmute Post-Tax Contributions Held by the Rewards Program into New Consideration.**

¶33      The Department argues that because the Rewards Program is a third-party vendor, the disbursements it makes to Dove Mountain upon a claim when points are redeemed for "free" stays are new consideration, thereby creating revenue that must be included in Dove Mountain's "gross receipts" for calculating its "gross income" for transaction privilege tax ("TPT") purposes. The majority opinion similarly notes that the relationship between Dove Mountain and the Rewards Program creates an "intermediary structure" which requires the conclusion that the payments from the Rewards Program to Dove Mountain are "compensat[ion]" for "free" stays, rather than disbursements from fund reserves upon requests by the contributing hotels. But in my opinion, mere use of an "intermediary structure" to hold one's reserves for later distribution cannot be sufficient to change the nature and character of the reserves into non-reserves. Individuals and businesses commonly use third parties as holding entities in financial transactions. Indeed, the entire banking industry functions in this manner.

¶34      Here, it is undisputed that Dove Mountain, as with other participating hotels, provides the relevant premium in the form of "free" stays for those customers who are also Rewards Program members. Dove Mountain pre-pays the costs of providing this premium by sequestering post-TPT revenue within the Rewards Program and then reclaiming funds from the Rewards Program after redemption by members occurs. Further, Dove Mountain has limited its tax refund claim to the amount of its own contributions to the Rewards Program within a given tax period, minus 24% as conceded by Dove Mountain's counsel at oral argument. Therefore, the money Dove Mountain receives from the Rewards Program that it seeks to exclude from its "gross receipts" is equivalent to a maximum of 76% of its own remittances to the Rewards Program, all of which are composed of post-TPT revenues from hotel stays by paying Rewards Program members.

Taxing disbursements which match Dove Mountain's contributions to the Rewards Program—again, contributions taken from income that has already been taxed under A.R.S. § 42-5070—is akin to taxing a business's withdrawal of funds within a savings account that it set aside for a future anticipated use under the pretense that such withdrawal was independently and newly realized "income." I do not agree that the legislature intended such a result.

## V. *Consumers Market* is Not Meaningfully Distinguishable and Remains Controlling Authority in this Case.

¶35　　　　Further, I disagree with the majority opinion's conclusion that *Consumers Market*, our supreme court's controlling precedent on the issue of TPT and loyalty programs, is materially distinguishable from this case.

¶36　　　　Here, as in *Consumers Market*, when Rewards Program members pay for rooms at Dove Mountain, Dove Mountain pays TPT on the revenue in question. *See State Tax Comm'n v. Consumers Mkt.*, 87 Ariz. 376, 378 (1960). Those customers receive points in the Rewards Program. And like patrons in *Consumers Market*, who received "free" groceries by redeeming stamps, a Rewards Program member's points may be redeemed at Dove Mountain for "free" hotel stays, among other things. *Id.* at 379–80. As in *Consumers Market*, Dove Mountain—albeit together with other participating Marriott-branded hotels—must bear the expense of funding the Rewards Program itself, both by honoring member claims for "free" stays, as well as providing contributions out of its post-tax income received from paid member stays. *Id.*

¶37　　　　The majority opinion distinguishes *Consumers Market* by pointing to several factual differences, none of which I find controlling. First, the majority opinion observes that the record is devoid of evidence that Dove Mountain increased the prices of their hotel rooms to cover the later-incurred costs of "free" lodging provided in exchange for points redemption. This is accurate. Instead, Dove Mountain reserves a portion of its post-tax revenue to cover the costs of providing that premium and further to pay for marketing the Rewards Program. But as discussed above, I do not see how this distinction operates to change the character of the funds used to cover the premiums Dove Mountain and other participating hotels provide. As I see it, the difference between up-charging product to pay for premiums, as in *Consumers Market*, and impounding a portion of post-tax revenues as reserves to pay for premiums, as Dove Mountain does in this case, is not critical to the analysis in *Consumers Market*. The critical fact is that funds used to cover the costs of providing customers' premiums

through their respective loyalty programs have already been subjected to taxation. *Id.*

¶38　　Second, the majority opinion argues TPT was assessed under a different classification in *Consumers Market* (there, the retail classification, and here, the transient lodging classification). But classification has no bearing on *Consumers Market*'s applicability here. Both cases involve the assessment of TPT governed by A.R.S. § 42-5008(A). This provision states that the purpose of TPT is to impose taxes "measured by the amount or volume of business transacted by persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales or gross income." *Id.* The TPT statutes make no distinction across classifications other than to explain which business activities are subject to the tax. Thus, I disagree that the difference in classifications provides a substantive analytical distinction between *Consumers Market* and this case.

¶39　　Third, the majority opinion concludes *Consumers Market* is distinguishable because of an "intermediary structure" in the relationship between Dove Mountain and the Rewards Program. This position is akin to the Department's argument that *Consumers Market* is distinguishable because the Rewards Program is a "third-party" vendor, thereby making its payments to Dove Mountain separate revenues that are a part of Dove Mountain's "gross income." But I do not believe the evidence supports this distinction.

¶40　　Under a true third-party vendor relationship, the participating vendee does not itself pay for, or otherwise incur the costs of, providing the premiums that customers receive upon redemption of points. *See State Tax Comm'n v. Ryan-Evans Drug Stores*, 89 Ariz. 18, 21–22 (1960) (explaining that marketing company was a third-party vendor because participating taxpayer-retailer did not itself provide premiums and only provided its customers with a claim against the marketing company who then redeemed the claim). By contrast, Dove Mountain itself, not the Rewards Program, provides the relevant premium, "free" stays at Dove Mountain.

¶41　　Further, any concerns that the Rewards Program does not record Dove Mountain's contributions as part of a segregated account or that members' points may be earned outside of Arizona—and therefore are not subject to the lodging TPT—are also resolved by the fact that Dove Mountain limits its claim for a tax refund here to the amount of contributions it made to the Rewards Program. Though self-imposed, this

limitation ensures the value of the points redeemed for "free" hotel stays at Dove Mountain will be taxed to the extent they exceed Dove Mountain's contributions for paid member stays—the value of which has already been subjected to Arizona's TPT statute at the point of purchase. This limitation both resolves any concern that applying *Consumers Market* will thwart Arizona's TPT requirements and clarifies that to hold otherwise would be to subject Dove Mountain to double taxation.

¶42 Given the limited claim at issue here and the character of Dove Mountain's contributions and the subsequent remittances back to Dove Mountain after a claim, the Rewards Program effectively acts as a repository of post-TPT revenues that are later accessed by Dove Mountain to offset the cost of providing members "free" stays upon their redemption of points. When limited exclusively to amounts less than what Dove Mountain contributes to the Rewards Program, this mechanism functions much as a company might use a bank to impound revenues in a contingency account to pay future costs. Because use of such a system does not impact *Consumers Market*'s substantive analysis, I do not view it as sufficient to distinguish *Consumers Market* from governing this case.

¶43 The Department further argues *Consumers Market* is distinguishable from this case because members can gain Rewards Program points from third parties independent of Dove Mountain and may also redeem those points from such independent third parties. The Department suggests that because third parties are involved in the Rewards Program, Dove Mountain is not a "self-redeemer" of Rewards Program points, and the Rewards Program itself is simply a third-party vendor "purchasing" stays from Dove Mountain to redeem member points. But the involvement of third parties, without more, does not provide a meaningful distinction.

¶44 *Consumers Market*'s holding turns on how the taxpayer-grocer used revenues upon which it had already paid TPT to fund its marketing program, including both administration and the cost of groceries that were later redeemed by customers as a premium. *Consumers Mkt.*, 87 Ariz. at 379 ("[T]he 'consideration' referred to in the [TPT statute] has already been paid by plaintiff's customers."). Because the taxpayer had built its marketing program's costs into its customers' initial grocery purchases, its customers had pre-paid for the premiums they redeemed later. *Id.* Only one taxable transaction took place, occurring at the initial purchase. *Id. Consumers Market* observed that later redemptions were not "sales" that could be counted towards the taxpayers' "gross income," and imposing TPT upon the redemption transaction would constitute impermissible double taxation. *Id.* at 379–80.

¶45   The critical analysis in *Consumers Market* centers on whether the taxpayer itself provides the premium for its members to redeem and how that taxpayer covers the costs of providing those premiums. *Id.* Where a taxpayer uses revenues that have already been subject to TPT to cover costs incurred in self-furnishing premiums under a marketing program, this use of post-TPT revenues is not a second, independent realization of gross income derived from that taxpayer's business upon which the Department may impose additional levies of TPT. *Id.*

¶46   Here, regardless of where or how members earned their points, or where or how else they may redeem them, Dove Mountain must permit members to redeem those points by providing "free" lodging at Dove Mountain. This appeal concerns only the taxpayer, Dove Mountain. It does not concern the impact to or upon the taxpayer's customers. The focus of analysis must be solely limited to the taxpayer's receipt of money to cover the costs of the premiums it offers under its loyalty program. Thus, where Dove Mountain itself provides the premium at issue, notwithstanding what other premiums might be available to members from third parties, other benefits Dove Mountain's customers may receive are irrelevant. Relevant here is that all money claimed and received by Dove Mountain to cover the costs of the "free" stays it must provide to members upon redemption of points has already been subjected to TPT. This remains true regardless of wherever or however else members redeem points, and regardless of what other Marriott-branded hotels are also contributing post-TPT funds to the Rewards Program to pay for premiums.

¶47   Under these undisputed facts, I would hold that *Consumers Market* controls and the redemption transaction of exchanging Rewards Program points for "free" stays at Dove Mountain—together with the later claims for disbursement to cover the costs of those stays—is simply a "system of advanced spending and deferred enjoyment of the fruits thereof," and is not subject to a separate levy of TPT. *Consumers Mkt.*, 87 Ariz. at 379. That Rewards Program members can earn and redeem points through a variety of transactions, with a variety of vendors that do not involve Dove Mountain does not change the analysis relevant to this appeal.

## VI. The City of Marana Tax Code Does Not Authorize Imposition of TPT Against the Amounts at Issue.

¶48   Finally, because I would hold that the Rewards Program reimbursements are not subject to State TPT, I would similarly hold that those payments are not subject to TPT under the Model City Tax Code as

imposed by the City of Marana. Like A.R.S. § 42-5070, the Model City Tax Code levies TPT on revenues from hotel operation and measures the amount of TPT owed from the business's gross income resulting from its business activity. Model City Tax Code §§ 400(a)(1), 444.

**¶49**         Because I would conclude that the Rewards Program payments are not taxable income, but rather Dove Mountain's self-redemption of loyalty program points, those disbursements cannot be subject to TPT under the Model City Tax Code. To do so would, like under state statute, result in impermissible double taxation.

## VII.    Dissent Conclusion

**¶50**         For these reasons, I would reverse the superior court's grant of summary judgment. Therefore, I respectfully dissent.

